## Wytheville.

### MUSICK V. MUSICK.

#### June 11th, 1891.

1. DIVORCE—*Adultery—Evidence.*—In suit for divorce adultery may be proved by circumstantial evidence, such as visiting house of ill-fame, being shut up with an unchaste woman, consorting with prostitutes, and the like, even in the face of denial of defendant and *particeps criminis.*

2. IDEM—*Future marriage.*—Under Code, 1887, ? 2265, which section is constitutional, the court may, in such suit, decree that the guilty party shall not marry again, unless such decree be annulled.

Appeal from decree of circuit court of Russell county, rendered March 14th, 1888, in the cause wherein Bessie Musick was complainant and Elexions Musick, her husband, was defendant. The objects of the suit were a divorce *a vinculo matrimonii,* also the allowance of alimony and attorney's fee. The grounds alleged were adultery and desertion. The decree was in accordance with the prayer of the bill, and the defendant appealed to this court. The opinion states the case.

*Gent & Henry,* for appellant.

*Routh & Stuart,* for appellee.

LACY, J., delivered the opinion of the court.

The facts of the case are, briefly, that the complainant below was a female infant of tender years, living at her father's house, of pure and chaste character, life and repute, when the

defendant, a young man of good standing, resident in the neighborhood, sought and obtained an engagement of marriage with her, and, suiting his movements to his opportunities, under promise of marriage seduced and ruined her; that he then, dreading the consequences and fearing punishment for his crime, sought and obtained from her father and herself consent to an immediate marriage, as the best and only means of such atonement as was possible under the circumstances; that the marriage having been solemnized, and the prosecution for seduction thus barred, he lived with her only a few days as her husband, and then, without the slightest cause, abandoned her, and took up with and kept openly, lewdly, and lasciviously the company of fallen women, and contributed nothing in attention or care, nor otherwise, to the support of his said wife and their infant child, issue of the marriage.

The defendant answered, admitting the marriage, the seduction, and the desertion, but says the plaintiff offered opportunities which led him astray. He denies, however, the adultery charged in the bill subsequent to his marriage, admitting the association with the fallen woman in question, claiming to be ignorant of her character as such.

Depositions were taken by the plaintiff, proving the lewd character of the women in question, two in number, and the association with them in public and private by the defendant. The defendant took and filed the depositions of the two fallen women in question, each of whom denied all knowledge of any adultery committed by the defendant with any person subsequent to his marriage.

The circuit court, by its decree of March 14th, 1888, being of the opinion that the plaintiff, Bessie Musick, had shown herself entitled to a divorce from the defendant, Elexions Musick, her husband, *a vinculo matrimonii*, and that she was entitled to alimony and the care and custody of her infant child, issue of the marriage, decreed the said divorce, and restrained the said defendant from marrying again without the

further order of the court; and referred it to a commissioner to report upon the proper alimony to be allowed the plaintiff for the support of herself and her infant child.

From this decree the defendant appealed to this court. The errors assigned her are as follows, to-wit:

It was error in the court below to dissolve the bonds of matrimony in this case, upon the charge of adultery upon circumstantial evidence, the adultery having been emphatically and clearly denied in the answer.

Secondly. "It was error in the court, under the circumstances, to prohibit the defendant husband from marrying again, as being against public policy and contrary to the spirit of the Constitution of Virginia, and detrimental to society."

The evidence as to the adultery is that he paid open and marked attention to Diely, a young unmarried woman, whose reputation in the neighborhood is that of an unchaste and lewd woman, one witness proving that he surprised them on horseback in a compromising attitude, and also on a log. Other witnesses proved the character of the woman, and the intimate character of her association with the defendant; but no one proves the act of unlawful sexual intercourse between these two.

As to another woman, shown to be of evil life, the defendant is shown by the evidence to have sought her, and procured liquor, and to have brought her out on the road, and gone off in the woods or bushes with her alone, and to have remained alone with her a considerable time, in the night-time. There is a denial of the adultery charged, as has been stated, by the alleged *particeps criminis*.

The circuit court held that the crime of adultery had been proved, and the first question we must determine is whether this action is erroneous or otherwise.

In the recent work of Mr. William Hardcastle Browne, of the Philadelphia bar, on Divorce and Alimony, it is said (page 54): "If a married man, without justifiable cause appearing,

visits a house of ill-fame, he must have gone there for an improper purpose, and it is universally held as a proof of adultery. So, also, when he has been shut up alone with an unchaste woman." Citing *Evans* v. *Evans*. 41 Cal. 103; *Van Epps* v. *Van Epps*, 6 Bar. N. Y. 320; *Langstaff* v. *Langstaff*, Wright, Ohio, 148.

The same learned author also remarks that criminal desires may be inferred from consorting with prostitutes, entertaining persons known to be dissolute, or intimacy of any kind with such after knowledge of their immoral reputation. *Id.* p. 55.

Mr. Greenleaf says (Vol. II, § 44): " A married man going into a known brothel raises a suspicion of adultery, to be rebutted only by the very best evidence. His going there, and remaining there alone for some time in a room with a common prostitute, is sufficient proof of the crime."

Mr. Bishop, in his work on Marriage and Divorce, says (Vol. II, § 613): " Adultery is peculiarly a crime of darkness and secrecy; parties are rarely surprised at it; and so it not only may, but ordinarily must be established by circumstantial evidence. The testimony must convince the judicial mind affirmatively that actual adultery was committed, since nothing short of the carnal act can lay a foundation for a divorce. It is, generally speaking, necessary to prove that the parties were in some place together where the adultery might probably be committed." Citing Lord Stowell as saying :

" Courts of justice must not be duped. They will judge of facts as other men of discernment, exercising a sound and sober judgment, on circumstances that are duly proved, judge of them. The only general rule that can be laid down upon the subject is that the circumstances must be such as would lead the guarded discretion of a reasonable and just man to the conclusion; for it is not to lead a harsh and intemperate judgment, moving upon appearances that are equally capable of two interpretations, neither is it to be a matter of artificial reasoning, judging upon such things differently from what

would strike the careful and cautious consideration of a dis-
creet man.   The facts are not of a technical nature; they are
facts determinable upon common grounds of reason; and
courts of justice would wander very much from their proper
office of giving protection to the rights of mankind if they let
themselves loose to subtleties and remote and artificial reason-
ings upon such subjects.   Upon such subjects the *rational* and
*legal* interpretation must be the same."

Upon reason and upon the consideration of precedents, care-
fully considering the evidence in this case, can we say that the
crime of adultery has been proved?   Let us glance at the
evidence.

It is proved that the defendant husband had, under promise
of marriage, seduced the plaintiff wife, a woman of chaste
character; that, to prevent exposure and prosecution, he hur-
ried her into a hasty marriage under many protestations; that,
this accomplished, he, in a day or two, deserted his wife, a
girl of tender years, and it was given out that he had left the
country.

It is further proved that he has been since notoriously atten-
tive in public and in private, first with one unchaste female,
being surprised, when alone with her, in kisses and embraces;
that this woman is unchaste, and that these things are true, he
(the defendant) has not denied.   He denies nothing but the
adulterous cohabitation, and claims that the act cannot be
established by circumstantial evidence.

It is further proved that he subsequently went to a house of
ill-fame and brought hence another unchaste woman, and, get-
ting whiskey, went off with her along the highway and into
the forest with her, and remained all night thus associated,
lugging along with them an infant bastard child, which was
called by his name by the mother, in his presence.

For a married man thus to act, after he has thrown off all
the safeguard of association with and regard for his wife and
his legitimate child, and has deserted her finally and without

reserve, leaves no rational doubt as to what his acts were. The guilty desire on his part, and of the *particeps criminis*, and the concurrence of ample opportunity, thus sought and obtained, prove the crime.

Mr. Brown cites the familiar case of *Latham* v. *Latham*, 30 Gratt. 307, when the visit to the brothel was successfully explained, the visits being then established to be accidental and innocent. But what explanation have we here on the part of the husband? None whatever. He takes the depositions of Diely and Sal, and they testify that they have no knowledge of any adultery committed by him. What weight can properly be given to their denials under the uncontradicted circumstances set forth in the evidence in this cause?

I think there is no doubt as to the commission of the act of adultery. The only remaining question to be considered is as to the action of the circuit court in prohibiting the, defendant and guilty husband from marrying again.

Mr. Browne in his work mentioned above, says, as to this: " It is difficult to understand how a marriage can be dissolved as to one of the parties without being equally dissolved as to the other, and it is certain that no court can impose a restriction on the marriage of a divorced party without statutory grant of power. A prohibition to the guilty party to marry a second time after the entry of a decree of divorce *a vinculo* may be contained in a statute, or may be entered by a court under the authority of a statute. In either case the effect would be the same. Statutes imposing such restrictions are constitutional." P. 41, citing *Barleu* v. *Barleu*, 16 Cal. 378; *Elliott* v. *Elliott*, 38 Md. 357; *Sparhawk* v. *Sparhawk*, 114 Mass. 355.

In this state the question is regulated by the statute. Section 2265 of the Code provides that: " In granting a divorce for adultery, the court may decree that the guilty party shall not marry again; in which case the bond of matrimony shall be deemed not to be dissolved as to any future marriage of such

party, or in any prosecution on account thereof. But, for good cause shown, so much of the decree as prohibits the guilty party from marrying again may be revoked and annulled at any time after such decree by the same court by which it was pronounced."

In the decree complained of, and appealed from here, as we have already seen, the provision on this subject is—" but the defendant is restrained from marrying again till the further order of the court."

The authority of the statute has been followed, the discretion of the court has been exercised in the meantime and not finally. The decree settling the principles of the cause, and, therefore, appealable, is interlocutory only, and not final, an account having been ordered as to the proper amount of alimony which should be granted to this plaintiff wife and her infant child.

The defendant is not barred by a final decree from marrying again, which decree might be revoked by the same court by which it was rendered. But an account having been ordered, the court restrains the defendant from marrying again until the further order of the court. When the unsettled questions in the cause have been determined, and the final decree rendered, the defendant may or may not be decreed not to marry again. I am clearly of the opinion that the circuit court did not err in restraining the defendant from marrying again until the further order of the court. And if the decree in question could be construed to be a disposition of that question, I think the action of the court is authorized by the law, and that this subject is essentially one to be regulated by law, and that if there can be any case in which this discretion, vested by law in the courts, can be wisely exercised in restraint of marriage, this is such a case. The decree against re-marrying may be revoked when it appears proper to the court to do so. But if the evidence in this case is to be believed—and the defendant does not deny it—then the court could not but consider this defendant,

as he now appears, an unsuitable person to enter into the marriage relation.

We perceive no error in the decree appealed from, and the same will be affirmed, without, in any degree, intending to interfere with the future exercise by the court of its discretion upon this question of the refusal of the court to permit the defendant, the guilty party, to re-marry.

DECREE AFFIRMED.