# Richmond.

## NATIONAL SURETY COMPANY v. CORA LEE ROUNTREE,

### AND

## CORA LEE ROUNTREE v. H. D. DRISCOLL, INC., AND OTHERS.

January 17, 1929.

Absent, Chichester, J.

The opinion states the case.

In *National Surety Co.* v. *Rountree:*

*R. H. Talley*, for the appellant.

*Ellsworth Wiltshire*, for the appellee.

In *Rountree* v. *Driscoll:*

*C. P. Cardwell* and *Ellsworth Wiltshire*, for the appellant.

*Sands, Williams & Lightfoot, L. F. Cary, W. C. Coulbourn* and *Wallace C. Anderson*, for the appellees.

CAMPBELL, J., delivered the opinion of the court.

These two appeals involve but one question, viz.: The correctness of the action of the Industrial Commission in awarding compensation to the claimant, Cora Lee Rountree, for the death of her husband, Thomas Rountree, which occurred on August 26, 1927.

Cora Lee Rountree filed her application for a hearing before the Industrial Commission, praying that the commission would award her compensation for the death of her husband, and made H. D. Driscoll, Incorporated, and Globe Indemnity Company, its insurer, the city of Richmond, Allen J. Saville, Incorporated, and Employers' Liability Assurance Corporation, its insurer, and National Surety Company, defendants thereto.

On June 23, 1928, the commission made an award in favor of the claimant against the National Surety Company and dismissed her claim against the other named defendants. Upon application to one of the judges of this court, an appeal from this award was allowed the National Surety Company. As a matter of precaution, Cora Lee Rountree also sought and obtained an appeal from the action of the commission relieving the appellees, Driscoll, Incorporated, and others from liability. If from the evidence and all inferences which may be fairly drawn therefrom, the finding of the commission that Thomas Rountree was an employee of the surety company at the time of the accident which resulted in his death is without error, then of course the claimant has no claim for compensation against the appellees named in her petition for appeal. The finding as a fact by the commission that the deceased met his death by accident arising out of and in the course of his employment is not controverted by any of the parties involved. The whole controversy

revolves around the question of who was the employer of Rountree at the time of the accident.

Prior to August 25, 1927, H. D. Driscoll, Incorporated, had been doing certain work under contract with the city of Richmond. The workmen's compensation insurance carried by Driscoll corporation was embraced in a policy issued by the Globe Indemnity Company. To secure compliance with the contract, the city required the Driscoll corporation to execute an indemnity bond. This the corporation did, and the National Surety Company became the surety thereon.

The contract between the city and the Driscoll corporation contained this forfeiture clause: "Should all or any part of the work to be done under this contract not be performed to the satisfaction of the director of public works or should unnecessary delay occur in the execution of all or any part of the work, then and in either event the director of public works, whose decision in regard thereto shall be final and binding, may notify the contractor to discontinue all or any part of the work under this contract, but before taking charge of or re-letting all or any part of the work as hereinafter mentioned, the said director will notify the surety company uniting with the contractor for the faithful performance of the contract, in writing, of the default of its principal, offering said surety company the opportunity within five (5) days to take charge of the work and complete the said contract according to its terms and provisions. In the event the surety company does proceed with the work referred to within five (5) days, it shall likewise faithfully perform said work both as to the manner and as to the time within which said work is to be done to the satisfaction of said director of public works, whose decision in regard

thereto shall be final, and in the event said surety company fails to so faithfully perform all or any part of said work or should it unnecessarily delay all or any part of said work, then said director of public works may notify said surety company to discontinue all or any part of said work under this contract, as above provided in regard to the contractor. In the event said surety company proceeds with said work as above provided and is notified to discontinue the same as above provided, or in the event said surety company does not proceed with the work referred to within five (5) days, then said director of public works shall re-let all or any part of the said work as far as not completed, or may instead employ such additional force of labor, teams and the like, and purchase such materials, implements and the like to finish the said work, as in the opinion of the said director of public works are necessary, and collect the costs of the same from said surety company, or collect from said surety company the extra difference in cost, if any, between this contract and said re-let contract."

It also provided that in case of default upon the part of the Driscoll corporation, its surety was "to take charge of the work and complete the said contract according to its terms and provisions."

The Driscoll corporation became involved financially, and threats were made by its creditors to place its affairs in the hands of a receiver. Under these circumstances, on August 24, 1927, a meeting was held at the office of the director of public works, for the purpose of adjusting all matters relating to the Driscoll corporation. At this meeting were present T. Nelson Parker, attorney for the Driscoll corporation, H. L. Driscoll, its superintendent, Whiting Faulkner, attor-

ney for the Richmond Trust Company, G. M. Bowers, assistant director of public works of the city of Richmond, Richmond Lacy, assistant city attorney, W. F. Curtis, of the National Surety Company, and Allen J. Saville, President of Allen J. Saville, Incorporated. Colonel R. Keith Compton, director of public works of the city of Richmond, was also present at intervals. All persons at this meeting either expressly or tacitly agreed that the contract between the city and the Driscoll corporation should be terminated.

Pursuant to the conclusion reached at this conference, Colonel Compton, director of public works of the city of Richmond, sent the following letter to the Driscoll corporation:

"H. D. Driscoll, Inc.,
"c/o T. Nelson Parker, Secy.,
"710 Mutual Building,
"Richmond, Virginia.

"Dear Sir:

"After conference in the office on this day in which were present beside yourself, Mr. Faulkner representing the banks, Mr. Warren F. Curtis representing the National Surety Company, Mr. H. L. Driscoll, Mr. Richmond T. Lacy, assistant city attorney, Mr. Allen J. Saville, and the writer, you requested that this office declare forfeited contracts numbers 595, 596, 597 and 598, all of which were awarded you on June 16, 1927, for the construction of sewers located in various sections throughout the city, and notice is hereby given the H. D. Driscoll, Incorporated, to discontinue, effective August 25, 1927, all work under the above specified contracts.

"Complying with the agreement made in said mentioned conference, this office will prepare voucher, payable this date, in favor of H. D. Driscoll, Incorporated,

to the extent of $3,000.00 for work completed under the terms of these contracts, with the express understanding and agreement that this sum shall be applied to the satisfaction and payment of all salaries and wages due by you growing out of the prosecution of the work embraced in the contracts mentioned above.

"You are further advised that notice will be given the National Surety Company, surety under your contracts to take over all work in connection therewith for the faithful performance to completion of the contract work."

On August 25, 1927, the following letter was sent the National Surety Company:

"Mr. Warren F. Curtis, Manager,
    "National Surety Company,
        "American National Bank Building,
           "Richmond, Virginia.

"Dear Sir:

"Herewith attached please find copy of letter addressed to H. D. Driscoll, Incorporated, declaring forfeited contracts numbers 595, 596, 597 and 598, dated June 16, 1927, for the construction of certain sewers at various locations throughout the city.

"As surety with the contractor for the faithful performance of the contracts, you are herewith notified of the default of H. D. Driscoll, Incorporated, with the request that you take charge of the work and complete said contracts according to their terms and provisions, with the understanding that you will proceed with the work within five days from date of this notice and shall faithfully perform said work as to manner, terms and time specified in said mentioned contracts.

"In accordance with the agreement reached in conference held in our office on yesterday we have paid H. D. Driscoll, Incorporated, the amount of $3,000.00 which payment is made said contractor for work done.

"We will request that you acknowledge the receipt of this letter and advise us in writing the name of the contractor whom you will designate to take charge of and complete this work."

In the opinion of the commission it is said: "Such was the situation when the claimant was killed on August 26th. The Driscoll company's insurer denies liability because it contends that its connection with the whole matter had been definitely terminated by the formal declaration of default made by the city on August 25th, and by its having informed the employees the day before that it was no longer in charge, paying them off at the same time; the city of Richmond disclaims liability because it had not in any manner assumed the work in question, and, furthermore, denies that it can be held liable as owner here under section 20 (a), because the building of new sewers has never been made a part of its trade, business or occupation; Allen J. Saville, Incorporated, contends that it is not liable as it had not taken over the work at the time Rountree was killed, and did not until September 12th; the National Surety Company takes the position that it was merely surety on Driscoll's bond, and that it was not until September 12th that it made arrangements with Saville to take over the work."

As we are of opinion to affirm the award, it would serve no good purpose to attempt to follow the argument of appellees seeking to sustain the finding of the commission in their favor. The complaint of the National Surety Company is that the commission erred in holding it was the employer of Rountree because the evidence is wholly insufficient to warrant such a finding. On the other hand, it is argued that the findings of fact of the commission are final and conclusive under the compensation law.

These contentions clearly present the question: What is the status in the appellate court of a case appealed from the Industrial Commission?

In *Stonega Coke & Coal Co.* v. *Sutherland*, 136 Va. 489, 118 S. E. 133, it is said: "Section 61 of the act establishing the commission (Acts 1918, chapter 400), as amended by Acts 1922, chapter 425, page 741, expressly provides that the 'award of the commission * * * shall be conclusive and binding as to all questions of fact.' In the absence of fraud, the findings of fact by the commission is not subject to review. It is the sole judge of the facts established by the evidence, and neither evidence adduced before it nor any other evidence can be introduced to impeach or qualify the facts found by it."

This case has been frequently cited to sustain the contention that the findings of fact by the commission are conclusive in all cases. We do not so understand the rule there laid down. What we comprehend that case to hold is simply this: (a) whenever there is a conflict of evidence, the findings of fact based upon a preponderance of the evidence, or upon that evidence deemed by the commission credible, are conclusive and binding; (b) when there is no conflict of evidence, then, if there be any evidence to support the findings of fact, such findings are conclusive and binding.

In *Board of Supervisors* v. *Lucas*, 142 Va. 84, 128 S. E. 574, the commission held that a deputy sheriff was an officer of the county. In the appellate court it was contended that this finding was conclusive. The court, however, held that the findings of fact were not conclusive for the reason that a deputy sheriff was not an officer of the county but was a State officer. In other words, there was no warrant of law to sustain the

commission, nor, in the nature of things, could there be any evidence upon which to base such findings of fact. In disposing of the question it is said in the opinion: "This court will not accept as a finding of fact by the commission that which it judicially knows is not a fact." This language has often been misconstrued. All that the court meant to say was: "In order for the commission to find a fact, it must be predicated upon evidence introduced or appearing in the proceedings."

That an award without evidence to support it is illegal was held in *Scott* v. *Willis*, 150 Va. 260, 142 S. E. 400, Mr. Chief Justice Prentis, delivering the opinion of the court, said:

"One of the questions raised in the argument is as to whether the petitioners were entitled to a transcript of the evidence before the commission, as a part of the record. The statement is made, relying upon Code, section 1887 (61), as construed in *Stonega Coke & Coal Co.* v. *Sutherland*, 136 Va. 489, 118 S. E. 133, and *Burleson* v. *Coal Corp.*, 145 Va. 79, 133 S. E. 663, that the commission contends that the transcript of the evidence is no part of the record, and that all the petitioners were entitled to was that part of the record showing the findings of fact. This is doubtless true, where the evidence is conflicting, but in cases like this, where the only complaint is that the evidence is insufficient to support a finding, there being no conflict, a question of law is raised. The petitioners contend that they have the right to have the evidence certified, so that this question of law may be determined.

"We agree with this contention of the petitioners, because if in fact there be no evidence upon which an award can be legally based, then clearly an award which

is unsupported by evidence is an illegal award. It is almost, if not quite, equivalent to a demurrer to the evidence.

"Upon motion of the petitioners here, the evidence in this case has been certified and is before us."

■ In the instant case, the evidence adduced before the commission appears in the record upon which the petition for an appeal is based. Exercising the power conferred upon him by the contract between the city and the Driscoll corporation, the director of public works declared the Driscoll corporation was in default and its contract terminated. This action, according to the great weight of the evidence, was acquiesced in by W. F. Curtis, who, at the meeting of August 24th, represented the National Surety Company. Under the terms of the contract, the surety was "to take charge of the work and complete the said contract according to its terms and provisions." That provision of the contract, when read in connection with the provision that the surety company should have five days within which to decide either to take charge of the work and complete the contract, or else permit the city to take charge, demonstrates that the further connection of the city with the work was dependent upon the action of the surety company. Colonel Compton, director of public works, testified that the city was not in charge of the work at the time of the accident. He also stated that he "understood" that the surety company was going to complete the work. This was also the understanding of G. M. Bowers, assistant director of public works. This witness further stated that on the night of August 24th he had a telephone conversation with W. F. Curtis, relative to securing contractors to complete the work.

On August 27th, the day after the accident, Curtis, representing the surety company, asked R. B. Gibson, acting for the city, to get Hughes and Keegan to "have the work lighted up." Compton also stated that on the 27th he called the attention of the surety company to the necessity of keeping the work lighted to protect the public from falling into manholes.

T. N. Parker, attorney for and secretary of the Driscoll corporation, testified that he attended the conference at the city hall on the 24th, that it was his endeavor to get sufficient money to pay off the laborers and continue the work. That Curtis was not a passive spectator at this meeting is evidenced by the further statement of Parker that "Mr. Curtis, the bond man, said if Driscoll was given this money and attempted to go on with the work he would call upon the city to either declare this job in default or in some way get him off the bond." Parker also stated that everybody in the meeting agreed that the connection of the Driscoll corporation with the contract ended on the 24th.

The continuance of Rountree on the job was due, no doubt, to the mistaken view of Parker that Allen J. Saville, Incorporated, would continue the work for the surety company. The fact that no contract was entered into by the surety company with Saville, Incorporated, to complete the work, until September, is relied upon as conclusive proof that the surety company was not in charge of the work on the day of the accident. In view of the positive statements of witnesses that it was understood that the surety company took charge immediately upon default upon the part of the Driscoll corporation; that it was endeavoring to secure a contractor to complete the job; that it was placing lights to protect the public; and also in view of the fact that W. F. Curtis, the representative of the company, failed,

in the face of this evidence, to testify that his company did not take charge of the work, seems to us conclusive of the question of liability. The fact that no explanation is given in the record for the failure of Curtis to testify warrants this court, as it did the commission, in drawing the inference that if he had testified he would have shown the liability of his company.

■ In *Chahoon's Case*, 20 Gratt. (61 Va.) 733, 798, it is said: "The conduct of a party in omitting to produce that evidence in elucidation of the subject matter in dispute which is within his power, and which rests peculiarly within his knowledge, frequently affords occasion for strong presumption against him, since it raises strong suspicion that such evidence, if adduced, would operate to his prejudice."

■ The fact that the surety company did not actually begin work on the job until September did not relieve it of the legal duty under the contract to take charge of the situation upon the default of the Driscoll corporation. If additional work was done by Rountree, it redounded to the benefit of the surety company. It knew on the 24th that work was being done. If it did not wish the work to continue it was the duty of the surety to stop same.

■ The Virginia compensation statute has provided the commission as a disinterested tribunal to ascertain the facts. The proof of such facts may be established by circumstantial evidence, as well as by direct evidence. It is not necessary that the proof convince beyond a reasonable doubt; all that is necessary is that it fairly preponderate in favor of the claimant. In taking this proof, the commission is not to be governed by the strict common-law rules of evidence, but it is empowered by the statute, in the exercise of sound

discretion, to give probative weight even to hearsay evidence. *American Fur. Co.* v. *Graves,* 141 Va. 1, 16, 126 S. E. 213.

From what has been said it follows that we are of opinion that the award of the Industrial Commission is without error. Cora Lee Rountree, having prevailed in the case of National Surety Company against her, is entitled to a judgment for costs against the National Surety Company. In the case of Cora Lee Rountree against Driscoll, Incorporated, and others, the appellees, costs will be awarded against the appellant, Cora Lee Rountree.

*Affirmed.*