# Staunton

W. Disney Cole v. E. Louise Washer Cole.

September 21, 1933.

Present, Campbell, C. J., and Epes, Hudgins and Browning, JJ.

The opinion states the case.

*David Meade White,* for the appellant.

*Fulton & Hall,* for the appellee.

BROWNING, J., delivered the opinion of the court.

The appellant, in this suit, contends that the Circuit Court of the city of Richmond erred by its decree, entered May 3, 1932, granting the appellee a divorce from the bonds of matrimony from her husband, W. Disney Cole, on the ground of adultery, and awarding her $75 per month as permanent alimony, and he asks that this decree be reversed, that this court enter such order as the trial court should have entered, dismiss the complainant's bill and grant him such relief on his cross-bill as he may be entitled to.

The plaintiff's bill charged the defendant with having committed adultery on June 8th and 9th, 1929, with an adult woman at the Martha Washington Hotel at Virginia Beach, in the State of Virginia; that he there, and at that time, registered himself and the said woman in the name of "Mr. and Mrs. W. D. Cole" and that they occupied room

number 301 from the afternoon of June 8, 1929, until the afternoon of June 9, 1929.

The answer and cross-bill of the defendant denied the allegations of the plaintiff's bill and alleged the desertion of the defendant by the plaintiff and charged that the plaintiff was a person with a natural and incurable impotency of body, existing at the time of their marriage and he prayed for appropriate affirmative relief.

Voluminous depositions were taken and we have before us a chapter of unhappy details, a large part of which need not be recited here. The parties were married in 1922 and lived together as husband and wife until June 9, 1929. From the last mentioned date to July 3, 1929, they lived together in the same apartment and occupied the same room and bed but under strained marital relations, that is they did not cohabit between the last mentioned dates. During most of the years of their married state they lived in a normal happy way, both bearing their share of the burdens and participating together in the pleasures incident to married existence.

Mr. Cole was a generous husband and always provided his wife with ample funds and with the physical comforts and conveniences. Mrs. Cole was a dutiful wife. She was never extravagant and did her own house work, including the cooking. Mr. Cole held an important and remunerative position with the Epes-Fitzgerald Paper Company, of Richmond. He enjoyed a good salary and gave Mrs. Cole an allowance of $65 per month, which she checked out for herself from their joint bank account, which he opened or established.

In the fall of 1924, in addition to the doing of his regular duties, he entered the T. C. Williams Law School, from which he graduated in 1927, and then after passing the bar examination he became a member of the bar of the city of Richmond. His law studies were prosecuted during the night terms of the law school. This, quite naturally, detained him from his home, but sometime before June 9, 1929, his absences from his home grew

more frequent and extended into later hours, Mrs. Cole being alone in the apartment. Her remonstrations became insistent and so their relations were jarred and became somewhat disturbed.

On June 6, 1929, Mr. Cole, as the representative of his employer, went to the annual meeting of the Virginia-Carolina Paper Trade Association at Virginia Beach. He drove down in his automobile, accompanied by some other gentlemen, who were representatives of similar interests, as his guests. They stopped at the Cavalier Hotel, arriving there in time for lunch, on the 6th, which was on Thursday, and Mr. Cole left the hotel or checked out on the afternoon of the 8th of June, 1929. He did not communicate with Mrs. Cole during this time and she called him over the long distance 'phone and was told by him that as some of the men and their wives were staying over for the week-end he had decided to do likewise and he would reach home on Sunday afternoon or night.

Working for the Fitzgerald company, and in the same office with Mr. Cole, was a young woman, named Miss "X," sometimes called Mornie "X." Indeed, she was Mr. Cole's stenographer and "thereby hangs a tale."

Mr. Cole, Mrs. Cole and Miss "X" were all members of the Third Presbyterian Church Sunday School. Mr. Cole taught a class and Mrs. Cole and Miss "X" were members of a class and sat together.

On Sunday morning, the 9th of June, Mrs. Cole, as usual, went to Sunday school and there noted the absence of Miss "X" and upon inquiry as to her absence was told that she had gone to Virginia Beach. When she returned home she called Mr. "X," Kitty's father, and he told her that his daughter had gone to Virginia Beach "with two other ladies from the office" and that she said she would return home about ten o'clock Sunday night. Mrs. Cole's suspicions were aroused and she left her home early that night and drove to Mr. "X's" house, on 32nd Street, in Church Hill, Richmond, and waited on the street until about eleven o'clock when her husband

appeared in his car, from which Miss "X" alighted and went into her house. Mrs. Cole tried to hail her husband by calling to him as he started off. He looked in her direction but continued on to their apartment, to which she, also, returned. She charged him with having brought Miss "X" home, which he denied, saying that he had been at Virginia Beach all of the time and that he had come back alone. Mrs. Cole then called Miss "X" over the 'phone and she denied that Mr. Cole had brought her home and said that she had not seen him, Mrs. Cole protesting that she had seen her husband put Miss "X" out of his car at her home. Mrs. Cole then asked her husband to carry her to her mother's home and the same scene was re-enacted there with the same vehement denials by Mr. Cole of the whole thing.

The Coles then returned to their home and the matter was discussed again between them. She said: "It looks to me like you want your freedom. * * * Suppose you give me $100 a month and half the furniture in this apartment," to which he replied that he would give her $125 per month and all the furniture and a lot in Ginter Park, which they owned jointly. The next morning Mrs. Cole put the proposition in writing as her husband, at her instance, had said that he would sign a paper effecting it. When he read the writing he reminded her that she had left out the lot. This was added and he signed the paper. Then Mrs. Cole told her husband that she had written a note for Miss "X" to sign and she would go down to the office for that purpose. She was told, when she arrived at the office, that Miss "X" would not be there before nine-thirty. She waited then on the street corner until Miss "X" arrived, when she stopped her and, in effect, charged her with clandestine and secret associations with her husband. Mrs. Cole then told her that she had deceived her own father as to having gone to Virginia Beach with two ladies from the office and she asked her how long the thing had been going on. Miss "X" said that he had just been taking her home from the office for

several months. Mrs. Cole handed her the paper, which she had written, and told her if she would sign it it would be the easiest way out for her. Miss "X" read it over three times and signed it, saying, with reference to Mr. Cole: "He said he was unhappily married to you and he could not get along with you," and Miss "X" added, "What is the matter with you; can't you hold him?"

Then, at the door of the building, Mrs. Cole asked a porter to call Mr. Cole downstairs and this is her account of what ensued: "Mr. Cole came downstairs, very much agitated. I said, 'Kitty signed the paper saying she was with you at Virginia Beach. She also said that you were unhappily married to me.' I said, 'Kitty, am I repeating your words?' She said, 'Yes.' I waited for Mr. Cole to make a reply, but he did not reply." Later Mr. Cole acknowledged that he took Miss "X" off the ferry boat and carried her home about eleven o'clock. She then asked him to get rid of Miss "X," which he said he would do in ten days. This promise was, however, not kept until the break was beyond healing.

On June 22nd Mrs. Cole engaged the services of a detective agency to ascertain where her husband was going at night and on July 2, 1929, a news item appeared in the Richmond Times-Dispatch, which is:

"GUESTS AT MARTHA WASHINGTON.

"Recent guests at the Martha Washington Hotel, Virginia Beach, are as follows: A. M. Garthright, Dr. W. E. Chapin and party, Mr. and Mrs. W. D. Cole."

Subsequently Mrs. Cole conferred with her detectives and on that day two of them went to Virginia Beach with photographs of Mr. Cole and Miss "X" for the purpose of ascertaining from the Martha Washington Hotel staff if the photographs would fit the persons who had stopped there as Mr. and Mrs. W. D. Cole. The registry card was examined and it contained the name "Mr. and Mrs. W. D.

Cole, 4 N. Davis, Richmond, Virginia," the number of the room, the rate, arrival in the afternoon on the 6-8-29, two in the party and the clerk's initials "L. P." It was testified that guests were required to write their names and addresses on the card and that the W. D. Cole, who registered, wrote this on the card in question. Those of the hotel staff who examined the photograph of Mr. Cole did not identify it as the man who was their guest, but the wife of the manager did so identify it.

Mrs. Cole received a report of this investigation and the relations between herself and her husband became more strained. She left Mr. Cole on July 3rd, going to the home of her mother. She employed counsel to institute suit for divorce. He notified Mr. Cole of his employment and of his purpose. Cole asked that the suit be not instituted at once but that he be given time to undertake to bring about a reconciliation, to which the counsel assented and, at the instance of Mr. Cole, the two detectives, Mrs. Cole and her mother and Mr. Cole went to the Martha Washington Hotel, Virginia Beach, on August 29th, to ascertain if Mr. Cole could be identified as the W. D. Cole who registered there on the previous June 8th. The manager, bookkeeper, registry clerk and the manager's wife saw Mr. Cole and looked at him. The three first could not identify him as their previous guest, W. D. Cole, but the manager's wife, Mrs. Gardner, was positive in her identification as one and the same person, and gave as her reason for her positiveness that she thought they were newlyweds and in that way gave them particular notice. Miss Pollitt, the clerk who registered Mr. and Mrs. W. D. Cole, testified that Mr. Cole, appellant, was not the same man.

We here note the fact that the detective agency was advised by the Cavalier Hotel that Mr. W. D. Cole left that hotel after luncheon on June 8th. It is seen, too, that the Mr. and Mrs. W. D. Cole, who were guests at the Martha Washington Hotel, registered there on the afternoon of June 8th. This is a fact of damaging effect to the appellant, particularly is this true when his account

of his doings and his whereabouts, from the time he left the Cavalier Hotel to Sunday evening at seven o'clock, when he took the ferry boat for Newport News *en route* to Richmond, is scrutinized.

He said he was "feeling pretty good" and wanted to go afishing and pursuant to this desire he drove, in the afternoon, to Norfolk and stopped where the C. & O. boats and ferries came in. That, of course, would be the place where one would arrive coming from Richmond to Virginia Beach that afternoon by train. He inquired where he could get a boat for the purpose of his fishing expedition. Then he drove to Port Norfolk and procured a man with a motor boat and they went out that afternoon but were unsuccessful and Cole was told, by the man, that they could probably catch more fish with a net at night, thus he spent the entire night on the boat, sleeping on a bench. He left the boat about seven o'clock Sunday morning and went to the Monticello Hotel and stayed there until six o'clock that afternoon. He spent the entire day at the hotel in an effort to recuperate from the effects of "feeling pretty good," without engaging a room. The strangest part of the thing is that he saw no one whom he knew and no one with whom he became really acquainted during the entire time. He did not know the name of the boatman. He called on no one to corroborate this remarkable statement.

Much of what we have said is based upon the testimony of Mrs. Cole. Some parts of it, not the most important, by any means, are denied by Mr. Cole, but the most damaging testimony and facts and circumstances are allowed to go unchallenged, uncontradicted and unexplained.

The paper, which Miss "X" signed, is as follows: "I (Miss 'X'), also called Kitty Jane, do hereby swear that I was with W. Disney Cole on Saturday, June 8, 1929, and Sunday, June 9, 1929, and that the said W. Disney Cole did bring me to Richmond on Sunday night in his car.

"(Signed)    (Miss 'X').

"Mon., June 10, 1929."

Here is a paper which was read by Miss "X" three times before she signed it. It contains a statement of her associations with the husband of another woman and a statement which Mr. Cole had denied time and again and which Miss "X" had, also, denied more than once. It is a statement, which, of itself, is well-nigh conclusive of this case. Remarkable to say that Mrs. Cole, in the presence of Miss "X" informed her husband that Kitty "had signed the paper" and acquainted him with its contents and added that Miss "X" had said that he was unhappily married to her and then said, "Kitty, am I repeating your words?" She said, "Yes." And then Mrs. Cole testified: "I waited for Mr. Cole to make a reply, but he did not reply."

If this grim indictment were untrue how readily its effect might have been countered by Miss "X" offering herself or Mr. Cole calling her as a witness to deny it or make some explanation of it.

■ It is almost tantamount to an admission of its truth by Mr. Cole. The appellant objected to the admission, as evidence, of the writing signed by Miss "X", but, in view of what we have said as to what happened between the Coles, in the presence of Miss "X," there can be no question as to its admissibility.

It is equally strange that Miss "X's" father was not called as a witness, inasmuch, as Mrs. Cole had testified that he had said that she was going to Virginia Beach with two other ladies from the office. Where were the two lady companions? Indeed, the trip of Miss "X" to Virginia Beach is enveloped in mystery. Where was she from the time she arrived at the resort on Saturday afternoon to the time that she took the ferry boat, on Sunday evening at seven o'clock, which happened to be the same boat which Mr. Cole caught. Where and with whom did she stay? Miss "X" might have said something to set this at rest. She knows, of course, but she has not said. The truth is that Miss "X" and Mr. Cole have been caught in a labyrinth of inculpating circumstances. They alone, if

the incidents had not pointed to the truth, could have extricated themselves. They have not done so.

There is no merit in the charges contained in the defendant's cross-bill. The evidence does not sustain them. The record abounds with testimony of unimpeached witnesses that Mr. Cole, before and after this suit was instituted, paid Miss "X" marked attention. His automobile was seen parked at or near her house so often as to make it a habit. He was seen to go in her house in the early evening and leave at eleven o'clock at night and after. He was seen driving her in the country. He took her to Buckroe Beach and was seen dining with her at Hilton Village, which is approximately one hundred miles from Richmond. If he had been a single man, and therefore eligible, this conduct would not have been subject to caustic comment, but, being a married man with marital obligations, it was blameworthy.

Mr. Cole, after all this, and up to July 3, 1929, did many kind and generous things for Mrs. Cole, indeed he has continued her monthly allowance to the time of the decree complained of. This is praiseworthy but it did not assuage the wounded feelings of his wife. She felt herself a wronged woman by the infidelity of the man who had plighted her his troth. Remorse is ever a wage of sin. The penitence of one who has gone away from the paths of rectitude is well, but with mortals, it does not blot out the stain of wrongs committed. It can and does go a long way toward mitigation but Cole's good faith is negatived when it is remembered that he continued to pay court to the woman who was a cause of his wife's sorrow.

It is rarely the case that adultery can be proved in any other way than by circumstantial evidence.

■ This and other courts and text-writers have emphasized the pronouncement that where a party litigant has the power to elicit evidence from witnesses, who are competent to speak, and does not avail himself of such testimony the presumption is that it would be against him.

The ruling of the trial court in this case is sustained by a number of cases which have been decided by this court, among them are: *Altavista Cotton Mills* v. *Lane,* 133 Va. 1, 112 S. E. 637; *Musick* v. *Musick,* 88 Va. 12, 13 S. E. 302. See, also, *Sharp* v. *Sharp,* 91 W. Va. 678, 114 S. E. 280; *Mammoth Oil Co.* v. *U. S.,* 275 U. S. 13, 48 S. Ct. 1, 72 L. Ed. 137.

The record in this case convinces us that the decree of the chancellor is right. The plaintiff's case was proven and we affirm the decree.

*Affirmed.*