# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

## AMERICAN NATIONAL INSURANCE COMPANY V. MARMADUKE W. BRANCH.

June 10, 1937.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Robert F. McMurran,* for the plaintiff in error.

*A. A. Bangel,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

On July 24, 1930, Marmaduke W. Branch was a member in good standing of Local Union No. 178, at Portsmouth, Virginia, of the International Brotherhood of Boiler Makers, Iron Ship Builders and Helpers of America, an unincorporated association hereinafter called the International Brotherhood, with headquarters at Kansas City, Kansas.

On that date his wife, Alma Hortense Branch, filed a written application with the Portsmouth lodge for death benefit insurance in the sum of $1,000, to which she was entitled under the constitution and by-laws of the International Brotherhood. The application stated that the said insurance was "to become an obligation of the American National Insurance Company in accordance with the terms, provisions and conditions of the existing policy contract with the International Brotherhood of Boiler Makers, Iron Ship Builders and Helpers of America, after this application has been approved by the Secretary-Treasurer of the International Brotherhood of Boiler Makers, Iron Ship Builders and Helpers of America and accepted by the Home Office of the American National Insurance Company," and was to be payable to Marmaduke W. Branch.

The application was duly approved by the said secretary-treasurer of the International Brotherhood, and accepted by the home office of the American National Insurance Company, which, on September 1, 1930, issued and delivered to the insured a certificate in the following words and figures, to-wit:

"AMERICAN NATIONAL INSURANCE CO.
of Galveston, Texas

"Certificate No. V-1957                                    Age—55—

"THIS IS TO CERTIFY THAT

INTERNATIONAL BROTHERHOOD OF BOILER MAKERS, IRON SHIP
BUILDERS AND HELPERS OF AMERICA

of Kansas City, Kansas, has contracted to insure
The life of....ALMA HORTENSE BRANCH......., ..WIFE..
of Member....MARMADUKE W. BRANCH......Local Union
No. 178 City of..PORTSMOUTH.., State or Province of.....
VIRGINIA....with

"AMERICAN NATIONAL INSURANCE COMPANY
"Galveston, Texas

"And it is understood that the benefits shall be:
  "I Death from any cause....................$1,000.00
  "II Death by accident...................... 2,000.00

"The above benefits are to be payable in conformity with
the policy contract now held by the International Brother-
hood of Boiler Makers, Iron Ship Builders and Helpers of
America, at their Home Office, in Kansas City, Kansas, to....
MARMADUKE W. BRANCH—HUSBAND......, the beneficiary
named by the insured with the right reserved by her to
change the beneficiary. No assignment of the insurance herein
referred to shall be valid. It is further agreed that all claims
arising under this certificate must be sent to the International
Brotherhood for approval, and the interpretation of the rights
of the insured hereunder shall be in conformity with the
policy contract, above referred to; but this certificate shall
not continue in force unless the above named member, a rela-
tive of the Insured, is a member of the International Brother-
hood in good standing, or deceased; and unless the insurance
premiums herein are paid as required by the Constitution and
by-laws of said International Brotherhood.
  "Moreover, if the member, named herein, secures a with-

drawal card from the International Brotherhood and continues to pay the insurance premiums required of him under its Constitution and by-laws, this insurance will remain in force except for the provision for Double Indemnity, which shall automatically terminate.

### "CONVERSION PRIVILEGE

"Any relative of a member of the International Brotherhood covered by this policy shall, in case of termination for any reason whatsoever, be entitled to have issued to her by the Company, without evidence of insurability, upon application to the Company made within thirty-one days after such termination and upon payment of the premium applicable to the class or risk to which she belongs and to the form and amount of the policy at her then attained age, a policy of life insurance on any one of the forms customarily issued by the Company, except term insurance, in an amount equal to the amount of protection under such group insurance policy at the time of termination.

"The insurance provided for by said policy contract for the relative named herein terminates with the termination (except by death) of membership of the above named member in the International Brotherhood. However, the insured, named herein, may elect to avail herself of the conversion privilege recited above.

"AMERICAN NATIONAL INSURANCE COMPANY.
"W. L. Moody, Jr.
"President

"W. J. Shaw
"Secretary

"Newton E. Gorton
"Actuary

"Approved by Chas. F. Scott

"Sec.-Treas. International Brotherhood
"Dated September 1st, 1930. Examined by....B....

"Keep this insurance in force by paying your premiums quarterly, semi-annually or annually in advance."

Mrs. Branch died on December 18, 1935, and due proof of loss was furnished to the Insurance Company. Upon its refusal to pay the claim this suit followed.

The Insurance Company filed a plea of general issue and grounds of defense, in which it alleged:

"First: That this defendant did not insure the life of Alma Hortense Branch as alleged in the notice of motion.

"Second: The said Alma Hortense Branch was not eligible for insurance of this kind because she was more than fifty-six years and six months old at the time she alleges she took out the alleged policy.

"Third: That no policy of insurance was issued upon her life by this defendant."

To prove his case Marmaduke W. Branch introduced in evidence the above application and certificate, together with proof that he was a member in good standing of the International Brotherhood, that his wife was entitled to this insurance under the constitution and by-laws of the association, that all premiums required of the insured had been promptly paid, that the necessary proof of loss had been filed with the Insurance Company, and that payment of the claim had been demanded and refused. None of these facts were controverted by the Insurance Company.

The trial resulted in a verdict of $1,000 in favor of the plaintiff below, on which the trial court entered judgment. The assignment of error is to the action of the court in not striking the plaintiff's evidence and in failing to set aside the verdict on the ground that it was unsupported by the evidence.

The first contention of the Insurance Company is that the certificate offered in evidence by the plaintiff below is not a complete insurance contract; that the basis of the liability, if any, of the Insurance Company is the "group policy" referred to in the certificate and therein stated to have been issued by the Insurance Company to the International Brotherhood and held by the latter; "that the plaintiff had failed to show the existence of any 'group policy' covering the life of Alma Hortense Branch and that if such a policy existed the plaintiff had failed to prove it was still in force or that any premiums had been paid thereon to keep it in force."

There is no claim that the group policy was not actually in existence, or that it had, in fact, been canceled or forfeited for the non-payment of premiums. The contention is that in the absence of affirmative proof that the group policy was in existence, or that it had not been canceled or not forfeited, there can be no recovery here.

■ There is no doubt about the correctness of the position that the certificate does not constitute the entire contract of insurance between the Insurance Company and the insured. *Boseman* v. *Connecticut General Life Ins. Co.* (U. S.), 57 S. Ct. 686, 81 L. Ed. ——, decided April 26, 1937. Consequently when the interpretation of the contract itself is involved, in order to ascertain the rights of the parties we must look to the group policy and not merely to the certificate held by the insured.

Hence, we find many cases which lay down the broad proposition that the beneficiary can not recover on an individual life certificate, furnished in accordance with the requirements of the group policy, without offering in evidence the latter or accounting for its absence. See 1 Couch on Insurance, sec. 29, pp. 44, 45; *Steffen* v. *Equitable Life Assurance Society* (Mo. App.), 64 S. W. (2d) 302, 305, 306; *Wann* v. *Metropolitan Life Ins. Co.* (Tex. Com. App.), 41 S. W. (2d) 50, 52, 53; *Thull* v. *Equitable Life Assurance Society*, 40 Ohio App. 486, 178 N. E. 850, 851; *Seavers* v. *Metropolitan Life Ins. Co.*, 132 Misc. 719, 230 N. Y. S. 366.

■ But in the instant case the issue was, as stated by the Insurance Company in its petition for a writ of error, "the existence of any 'group policy' covering the life of Alma Hortense Branch." Therefore, while the individual certificate is not a complete contract of insurance in itself, it is, we think, evidence of the fact that the group policy was in existence—in full force and effect; that it was in possession of the International Brotherhood at its home office; and that she, the insured, was protected thereby.[1] Indeed, this was the very purpose of the certificate, which is signed by both the Insurance Company and the International Brotherhood. It was the

[1] *Boseman* v. *Connecticut General Life Ins. Co., supra.*

only evidence of the existence of the group policy given the insured by the Insurance Company.

When the plaintiff below offered in evidence the certificate and proved that he was a member in good standing of the International Brotherhood, that his wife was entitled to this insurance under the constitution and by-laws of the association, that all premiums required of the insured had been promptly paid, that the necessary proof of loss had been filed, and that payment of the claim had been demanded and refused, this made out a *prima facie* case of the existence of the group policy and his right to recover thereunder. The burden was then on the Insurance Company to produce evidence, if any there was, that the policy was no longer in force or effect, and that it had been canceled or forfeited by reason of the fact, if it were true, that the International Brotherhood had failed to pay its share of the premium thereon. This information was exclusively in the possession of the Insurance Company and the plaintiff had no access thereto.

It may be said in passing that if the group policy was not in existence, or had been canceled or forfeited for the non-payment of premiums, it is inconceivable that the Insurance Company would have failed to introduce evidence to that effect. Indeed, the fact that it failed to disclose such information on the subject as was exclusively in its possession, raises a strong persumption that such evidence would have operated to its prejudice. *National Surety Co.* v. *Rountree*, 152 Va. 150, 163, 147 S. E. 537; *Cole* v. *Cole*, 161 Va. 116, 125, 170 S. E. 621; *Robinson* v. *Commonwealth*, 165 Va. 876, 880, 183 S. E. 254.

Certainly there is no evidence that either the insured or the beneficiary had any notice that the group policy had been forfeited or canceled. On the contrary, the evidence is that the insured faithfully and promptly paid all premiums which were required of her in order to keep this insurance in effect. For the Insurance Company to have accepted premiums from the insured after the group policy had been forfeited or canceled would have been a gross fraud on her.

*Sun Life Assurance Co.* v. *Coker*, 187 Ark. 602, 61 S. W. (2d) 447, was a similar suit on a group policy where the

beneficiary introduced in evidence only the certificate held by him. The same defense was interposed there as here, namely, that there was no proof that the group policy was still in force and effect, or that the premium had been paid thereon. There it was held that the introduction of the certificate made out a *prima facie* case of the existence of the group policy since it was not in the possession of the beneficiary and he had no access thereto; and, furthermore, that the failure to pay the premium on the group policy, which was the duty of the employer and not of the employee, was an affirmative defense, the burden of proving which rested on the insurance company. To the same effect see *Equitable Life Assurance Society* v. *McDonald*, 261 Ky. 148, 87 S. W. (2d) 123, 124, 125; *Equitable Life Assurance Society* v. *Smith*, 260 Ky. 56, 83 S. W. (2d) 885, 886; *Schaller* v. *Metropolitan Life Ins. Co.*, 286 Ill. App. 606, 3 N. E. (2d) 296; *Missouri State Life Ins. Co.* v. *Copas*, 265 Ill. App. 478, 481; *Smith* v. *Equitable Life Assurance Society*, 205 N. C. 387, 171 S. E. 346, 350.

In support of its position the Insurance Company relies on *International Brotherhood of Boiler-Makers, etc.* v. *Wood*, 162 Va. 517, 175 S. E. 45, in which we dealt with a group policy issued by the American National Insurance Company, the plaintiff-in-error here, to the identical International Brotherhood of which the plaintiff below was a member. That was a suit for disability benefits. There the insured, Wood, offered in evidence the certificate—such as was produced here—signed by both the American National Insurance Company and by the International Brotherhood, certifying that he was covered under the group policy therein referred to. But the group policy was not offered in evidence, nor was there any proof that it was in force at the time Wood was disabled. Upon this state of the record the lower court instructed the jury that there could be no recovery against the Insurance Company, and there was a verdict and judgment in its favor. There was, however, a judgment in favor of Wood against the International Brotherhood, which obtained a writ of error thereto.

There was no assignment of error or cross-error to

the action of the court in instructing the jury that there was no liability on the Insurance Company, and for that reason we expressly said (162 Va. 517, at page 525, 175 S. E. 45, 47) that "we are here concerned with this action only as an action against the International Brotherhood." It is true that we further said (162 Va. 517, at page 555, 175 S. E. 45, 59): "The court in instruction 3-D correctly told the jury that there could be no recovery against the American National Insurance Company." But since the liability of the Insurance Company was in no way involved in that appeal the expression of approval of this instruction was *obiter dictum* and, therefore, is not controlling here.

The Insurance Company next contends that the verdict of the jury should have been set aside and a final judgment entered for it, because in the application filed for the insurance Mrs. Branch stated that she was born on September 11, 1875, whereas, in fact, she was born on September 11, 1870. Both the application and the by-laws stated that insurance of the character here involved was limited to those under the age of fifty-six years and six months. If the date of her birth was September 11, 1875, as stated in the application, then Mrs. Branch was insurable. If, on the other hand, she was born in 1870, she was more than sixty years of age when the application was filed and hence was not insurable.

The Insurance Company proved that in two applications for insurance signed by Mrs. Branch and filed with the Life Insurance Company of Virginia, one dated May 5, 1900, and the other dated March 5, 1929, she gave the date of her birth as September 11, 1870.

The plaintiff below testified, both on direct and on cross-examination, that his wife was born in 1875; that she was ten years younger than he, and that he was born in 1865. It is true that in response to one question on cross-examination he answered, in a rather exasperated manner, that he did not know how old she was.

The fact that the plaintiff thus contradicted himself did not, of course, disqualify him as a witness. In such circumstances the jury was the judge of his credibility and what

weight should have been given to his testimony. *Pitt* v. *Metropolitan Life Ins. Co.,* 161 Va. 599, 606, 171 S. E. 488.

█ Under this evidence we think the correct date of the birth of Mrs. Branch was a question for the jury.

█ It is well settled that the statement of the insured as to his age, in the application for a policy, is presumed to be correct, and the burden of overcoming this presumption is on the insurer. 8 Couch on Insurance, sec. 2247-a, p. 7342; 4 Cooley's Briefs on Insurance (2d Ed.), p. 3163; *Southern Ins. Co.* v. *Wilson,* 214 Ala. 373, 108 So. 5; *Wolen* v. *Metropolitan Life Ins. Co.,* 287 Ill. App. 415, 5 N. E. (2d) 249, 252.

█ It was for the jury, not for the court, to say whether the insurer had carried the necessary burden of proof.

On the whole, our conclusion is that there is no error in the judgment complained of, and the same is accordingly

*Affirmed.*