# Richmond

## PERCY LEO CROSBY v. AGNES DALE CROSBY.

March 13, 1944.

Record No. 2736.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Christopher B. Garnett*, for the appellant.

*Armistead L. Boothe* and *Gardner L. Boothe*, for the appellee.

EGGLESTON, J., delivered the opinion of the court.

By a decree entered on July 5, 1939, the Circuit Court of Fairfax county granted Agnes Dale Crosby a divorce *a mensa* from Percy Leo Crosby, on the ground of cruelty, and awarded to her the custody of their four infant children. This decree ratified and approved an indenture made between the parties on May 11, 1939, whereby the husband settled upon his wife certain cash and other personal and real property, and bound himself to pay to her alimony for the support and maintenance of her and the children the annual sum of $14,500, payable in equal monthly instalments. The decree directed the payment of the stated alimony "until the further order of the court," with the right, recognized in

the indenture, to either party, should they be unable to agree thereon, to apply to the court for modification of the required alimony payment "on account of the change in the net income" of the husband, or in case of certain other eventualities which are not here material.

On March 17, 1941, the husband filed a petition in the court below alleging that effective on April 1, 1941, his income would be greatly reduced, and praying that on account thereof the amount of the alimony be reduced to the annual sum of $5,000, beginning on the latter date. The wife filed an answer denying the necessity for any reduction in the amount of the alimony to be paid for the support of herself and the children. Depositions on behalf of the husband were taken on May 28 and June 13, 1941. Those on behalf of the wife were taken on February 2, 1942.

It developed that on March 20, 1940, the appellant, Percy Leo Crosby, had filed suit against his wife, Agnes Dale Crosby, the appellee, in the Circuit Court of the Twelfth Judicial Circuit of Florida, praying for a divorce on the ground of "extreme cruelty." After this proceeding had been matured on an order of publication, on May 17, 1940, the husband obtained a default decree of divorce from his wife. On the same day he married Carolyn E. Soper at Sarasota, Florida, and since that time they have been living together in Florida and elsewhere, but not, so far as the record shows, in Virginia. However, the appellant makes no claim that the Florida divorce and his remarriage in any way impair or affect the right of the Virginia court to compel him to continue the payment of alimony fixed by the latter court.

About the first of April, 1941, or shortly thereafter, the husband made a payment to the appellee wife which brought the alimony due under the former decree up to that date. Thereafter he paid nothing until November 1, 1941, when a payment of $3,000 was made. During the year 1942 he paid only the sum of $3,500, and consequently was considerably in arrears by the time the taking of the testimony had been concluded.

On January 25, 1943, the lower court entered a decree reducing the amount of alimony from $14,500 to $7,500 per year, such reduction to be effective, however, only from the time the husband "shall have purged himself of his contempt by payment by him of all past due instalments" due under the former decree. It was further provided that "until all amounts due under said decree and indenture shall have been fully paid, the obligations in regard to payment thereunder shall continue."

Both parties excepted to and have appealed from the decree.

The husband contends that the lower court erred in not making the reduction retroactive to the date of the filing of his petition for modification of the required payments.

The wife contends:

(1) Because of the appellant's Florida divorce, which she says was "fraudulently" obtained, and because of his remarriage, which she characterizes as "bigamous," the appellant came into court with "unclean hands," and by reason thereof was debarred from any relief in a court of equity.

(2) The appellant should have been granted no relief until he had purged himself of contempt by paying all alimony in full up to the date of the entry of the decree sought and obtained by him.

(3) The evidence before the lower court fails to show that the husband was entitled to a reduction in the amount of the alimony fixed by the agreement of the parties and confirmed and required by the earlier decree.

Since a careful consideration of the record convinces us that the last contention of the wife is correct, and since this will dispose of the case on the merits, it will be unnecessary to pass upon the other points raised by her.

Inasmuch as the husband alleges that there has been a substantial reduction in his income and that this renders him unable to keep up the alimony payments at the amount fixed in his agreement with his wife and ratified by the court, the burden is, of course, on him to prove such allegations by a preponderance of the evidence.

The evidence shows that the principal occupation of the appellant is that of furnishing drawings or cartoons, commonly known as comic strips, for daily newspapers. These drawings are marketed through a Delaware corporation, Skippy, Incorporated, in which the appellant owns the entire stock and from which he draws a salary in return for his services. Skippy, Incorporated, furnishes or "syndicates" the appellant's drawings to various newspapers through a corporation known as King Features Syndicate, Incorporated. Under a contract beginning March 28, 1934, and running for a period of seven years, Skippy, Incorporated, received from King Features Syndicate, Incorporated, approximately the sum of $2,350 per week, or $122,200 per year. At the expiration of this contract the parties entered into a new agreement for a period of three years, under the terms of which Skippy, Incorporated, was to receive approximately $1,150 per week, or $59,800 per year, approximately one-half of the amount which it received under the former contract.

It is because of this reduction in the income of Skippy, Incorporated (which the appellant contends necessarily results in a proportionate decrease in his own income), that he has sought a reduction in the amount of the alimony required of him under the former decree. In support of his contention the appellant points out that during the years 1938 to 1940, inclusive, he drew from Skippy, Incorporated, either by way of salary or by overdrafts, annual sums running from $80,000 to $100,000, and that despite this he has incurred a large indebtedness for delinquent federal income taxes for the years 1940 and 1941. It is argued from this that it is manifest that after his income, beginning in March, 1941, has been cut in half, he cannot meet his expenses and maintain the alimony payments theretofore required of him.

While this evidence tends to show that in order to make both ends meet financially the appellant must make an adjustment in his expenditures, it is by no means clear that this should be at the expense of his wife and children. The mere fact that in recent years, despite a large income, the appellant has defaulted in the payment of his federal income taxes

does not necessarily mean that he lacked the financial ability to meet his obligations. Such default may have been due to neglect or even to wilful refusal to pay.

Where, as here, the husband contends that due to a change in his financial situation he is unable to carry on the alimony payments fixed in the original decree, it is his duty to make a full, fair and clear disclosure of all the pertinent facts bearing on his ability to pay. Moreover, he should show that his lack of ability to pay is not due to his voluntary act or because of his own neglect. 17 Am. Jur., sec. 651, p. 497; 27 C. J. S., sec. 239, p. 992.

Here the evidence with respect to the assets, liabilities and net worth of the appellant, and that dealing with his past and prospective income, his past and future necessary expenses, is so vague and confusing as to be of little probative value. There is an entire lack of testimony as to whether the appellant has any estate or income beyond his salary and drawing account from Skippy, Incorporated. While the New York counsel for Skippy, Incorporated, testified as to the income and disbursements of that corporation, including the salaries drawn by the appellant and large expenditures paid by the corporation for his account, he gave no account of what other estate, if any, the appellant owned and whether he had any income therefrom. This witness did not undertake to say that the large personal expenditures which Skippy, Incorporated, made for the appellant were reasonably necessary, whether they would have to be continued, and if so, for how long, or whether they could be substantially curtailed and brought within the limits of the appellant's reduced income without impairing the annual sum which he is bound both by his agreement and the decree of the court to set aside for the support of his wife and children. Nor is there a word of testimony from the appellant or any other witness on these crucial matters.

It appears from the evidence that pending these proceedings the appellant has maintained a residence in Venice, Florida, another at Greenwich, Connecticut, another at Lake George, New York, and others at several expensive hotels in

New York City. There is not a word of testimony from him or any other witness as to whether these living arrangements can be substantially curtailed or whether they must be continued, and if so, for how long.

Neither does it appear from the evidence whether the several valuable real estate holdings owned either by Skippy, Incorporated, or by the appellant individually, can or should be liquidated to his financial advantage.

██ All of these matters were peculiarly within the knowledge of the appellant himself, and his failure to appear and testify with regard to them, or to produce other witnesses to testify thereon, raises the presumption that such testimony would not have sustained his claim. See *National Surety Co. v. Rountree*, 152 Va. 150, 163, 147 S. E. 537; *Cole v. Cole*, 161 Va. 116, 125, 170 S. E. 621; *American Nat. Ins. Co. v. Branch*, 168 Va. 478, 486, 191 S. E. 668, 671; *Stockton v. Charlottesville*, 178 Va. 164, 169, 16 S. E. (2d) 376, 378.

It is true that there is medical testimony that the appellant was in no condition to attend the hearings in person on May 28 and on October 6, 1941. But there is no such testimony that he was unable to appear or give his testimony by deposition between the latter date and the entry of the decree appealed from on January 25, 1943. Nor was there any motion for a continuance or deferment of the decree in order that the appellant might be given an opportunity of testifying as to these matters which were so crucial to his case and which were peculiarly within his knowledge.

In contrast to the attitude of the appellant, and his failure to appear and testify, we have the clear and direct testimony of the wife that the cost of the maintenance and support of herself and the children, and of their education, is increasing and not diminishing. This testimony is supported by an itemized statement of such estimated expenses. Nor is there any evidence that these items are excessive.

On the whole we are of opinion that the appellant failed to carry the necessary burden of proof, and that the trial court erred in holding and decreeing that under the evidence

submitted the appellant was entitled to a reduction in the alimony fixed in the former decree.

Since the appellant makes no contention that the divorce decree which he has obtained from the appellee in the Florida court in any way affects the proceedings in the Virginia court, it is unnecessary for us to determine whether that decree is operative in this State.

The decree appealed from is reversed and the cause is remanded to the lower court to take such steps as it may deem advisable to enforce the collection of the amounts due and to become due by the appellant under the decree of July 5, 1939.

*Reversed and remanded.*