# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

Martha A. Hubbard v. Dan Valley Mills, et als.

January 24, 1944.

Record No. 2707.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Thomas A. Williams* and *L. C. O'Connor*, for the appellant.

*Wiltshire & Rivés*, for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

Martha A. Hubbard, appellant, filed her application before the Industrial Commission, seeking an award of compensation for the death of her husband, Ronald T. Hubbard, an employee of Dan Valley Mills, appellee.

On January 20, 1943, a final hearing was held before the full commission and a decision was rendered on February 5, 1943, denying compensation and entering an order dismissing appellant's application.

The controlling facts are these: Ronald T. Hubbard was an employee of appellee and, on November 18, 1938, while in the course of his employment, was in an automobile accident near Rocky Mount, North Carolina. In a brief period after the accident he was taken to the Rocky Mount Sanitarium and examined by Dr. R. S. Anderson. The medical report shows the only injury suffered by Hubbard was a contusion of the right knee.

During the examination he made no complaint of any headache or any head injury. He did complain of a pain in the chest. An X-ray examination of the knee failed to disclose any fracture, there was no apparent injury to the chest and after the application of a small dressing to the knee, Hubbard was permitted to leave the hospital. When he arrived at his home in Richmond on the night of the accident, he again complained of his knee and soreness in the chest, and stated that he was completely dazed following the accident, but made no complaint of any head injury.

Two days after the accident Hubbard drove from Richmond to Rocky Mount with an automobile dealer to ascertain the damage to his car. Four days thereafter he returned to work and continued to perform his customary duties without interruption. During this period he made frequent

written reports to his employer, the last report being dated the day prior to his death. In the letters and reports of Hubbard there was no complaint of headaches or head injury. They all indicated that the health and mental activity of the employee was normal.

On March 14, 1939, near five o'clock p. m., Hubbard became acutely ill, complained of severe headache, became unconscious and died at 10:20 p. m. No autopsy was held to ascertain the cause of death, but in the opinion of the attending physician, Dr. Earl W. Brian, death resulted from an intracranial hemorrhage.

Dr. Brian, when examined as a witness for appellant, upon being asked to define an intracranial hemorrhage, said:

"Intracranial hemorrhages are due in a great many cases to these causes, to injuries, to hemorrhage into tumors, to ruptures and aneurysms of the cerebral vessels, to ruptures of the vessels, due to high blood pressure, and arteriosclerosis, hemorrhage into syphilitic lesions of the brain, fulminating meningitis and encephalitis."

Dr. Brian further stated that death could have ensued from any of the causes mentioned.

Since the decision of this court in *National Surety Co.* v. *Rountree*, 152 Va. 150, 159, 147 S. E. 537, it has been the settled rule of law in this Commonwealth that: "(a) Whenever there is a conflict of evidence, the findings of fact based upon a preponderance of the evidence, or upon that evidence deemed by the commission credible, are conclusive and binding; (b) when there is no conflict of evidence, then, if there be any evidence to support the findings of fact, such findings are conclusive and binding."

The only issue in this case relates to causal connection between the accident of November 18, 1938, and the death of Ronald T. Hubbard which occurred March 14, 1939.

The only evidence in support of appellant's claim is as follows: On March 18, 1938, nearly a year prior to the accident, Hubbard was examined by the late Dr. Leroy Kellam. He was examined to determine the cause of an occasional headache and shortness of breath. The examina-

tion revealed the chest normal, urine negative, Wassermann negative, and negative for hardening of the arteries. No medication was prescribed. This physician was of opinion the cause of Hubbard's death was a subdural hemorrhage of traumatic origin. Dr. J. K. Richardson, a witness called by appellant, agreed with Dr. Kellam.

Appellant testified that deceased told her on the night of the accident: "I couldn't say what happened as I was completely dazed at the time." She further stated that he was never well after the accident. His breathing was impaired, he complained of a pain around the chest and he was noticeably nervous. However, he did not during this period consult a physician and did not complain of headache.

Dr. Brian, when questioned by counsel for appellant as to the dazed condition of Hubbard at the time of the accident, stated:

"I'd like to say this, that one may become dazed by a blow in the abdomen or on the chest, or may by a shocking injury to the knee, and the thing that I am driving at is, if I am to give an opinion on the man having had a head injury causing death, I'll have to know he had a head injury first. I don't have at hand from what I have read, proof that he had a head injury; neither do I find evidence of an old or recent head injury."

The burden was upon appellant to show a causal connection between the accident and the death of Hubbard. While all the medical evidence is to the effect that Hubbard died from an intracranial hemorrhage, there is no evidence upon which to base the conclusion that this hemorrhage resulted from an injury received by him in the accident of November 18, 1938.

The judgment of the Industrial Commission will be affirmed.

*Affirmed.*