# Richmond

## Edgar Wallace Humphries v. Newport News Shipbuilding and Dry Dock Company, A Corporation.

January 15, 1945.

Record No. 2917.

Present, Campbell, C. J., and Holt, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Hale Collins,* for the appellant.

*William McL. Ferguson, H. H. Holt, Jr.,* and *A. P. Staples, Jr.,* for the appellee.

SPRATLEY, J., delivered the opinion of the court.

Edgar Wallace Humphries has appealed from an order of the Industrial Commission of Virginia denying him compensation for injuries alleged to have been suffered by him as the result of an injury, arising out of and in the course of his employment with the Newport News Shipbuilding and Dry Dock Company, contending that the finding of the Commission is contrary to the law and the evidence, and without evidence to support it.

The history of this proceeding and the material evidence, rather fully stated, are as follows:

On October 20, 1943, Humphries wrote the Newport News Shipbuilding and Dry Dock Company the following letter:

"I was employed by you until June 28th, as a Clerk under Mr. C. R. Farinholt in the main store room. I was disabled while so employed and am now advised that such disability which the doctors say is osteoarthritis, deformative type, arose out of my employment and is permanent. You will please treat this letter as a notice of claim under the Workingmen's Compensation Act and forward me such forms as you may want me to fill out in connection therewith."

On October 25, 1943, the employer replied as follows:

"This will acknowledge receipt of your letter dated October 20, 1943, in which you state that you were disabled while employed at this Plant.

"We have been unable to locate any record of an injury.

Accordingly we have not made any report to the Industrial Commission. However, we are sending them a copy of this letter, together with your letter of October 20, 1943, so that they may be advised in the event you decide to make a formal claim.

"According to our records you were not in good physical shape when employed on November 7, 1942, and terminated your employment because of poor health."

Employer, on October 26, 1943, filed claimant's letter and a copy of its letter in reply to him with the Industrial Commission.

The Industrial Commission, on November 5, 1943, wrote Humphries informing him of its receipt of the letters and advising him that if he thought he was entitled to receive compensation that he should file application therefor. Enclosed was a form for his use. On November 20, 1943, he filed his application for a hearing, alleging that he was, on June 28, 1943, injured by an accident arising out of and in the course of his employment with the defendant company; that he was compelled to quit work on June 28, 1943; and that his injury was "osteoarthritis, deformative type, depriving me permanently of the use of both feet brought on by my employment."

A hearing was had before Commissioner Robinson, at Newport News, Virginia, on March 29, 1944, at which time two witnesses for the claimant testified,—the claimant and an employee of the defendant company. The evidence of Dr. Longaker, one of the employer's physicians, was stipulated. The depositions of two of claimant's physicians, which were taken prior to the hearing, were admitted and considered with the exhibits. The hearing commissioner found that the evidence failed to establish that the physical condition of the claimant was the result of an injury by accident, arising out of and in the course of his employment with the defendant company, and that no notice was given the company within thirty days of its alleged occurrence, as

required by section 23 of the Workmen's Compensation Act. Virginia Code, 1942 (Michie) section 1887 (23).

On review May 29, 1944, the full Commission affirmed this finding and denied the claim. The full Commission also found that, "as no accident has been established, no consideration can be given to the claim of aggravation of pre-existing condition."

Humphries, thirty-nine years of age, a former owner of a drug-store and a former successful operator of a real estate development, sought and obtained employment with the Newport News Shipbuilding and Dry Dock Company on November 7, 1942, as a clerk in its storeroom. His duties required him to fill orders from bins containing stock material.

At the hearing on March 29, 1944, he testified that in filling an order for bolts and nuts, he was straddling one of the bins, and after filling the order, he jumped from the last bin to the floor, a distance of approximately three feet; that as he landed on the floor, his feet began to hurt him, his right foot worse than his left, with pains extending up to his knees and everything turned black before him; that he thought he had sprained his ankle; that he had never had a pain like that before; that from that time his feet continued to pain him; and that he had made similar jumps before without hurting himself. He described the bins as being lined against the wall as in a grocery store, with a board in front of each bin or shelf one inch high to keep the nuts and bolts from falling out. He says he told Lloyd Davis, the stock boss, that his feet were hurting him; that he could not continue working; and that he was advised by Davis an order had already been issued to change him to another shift where the work would be easier. He could not state the exact date of the alleged accident, but thought "it was along in February, latter part of February."

On March 8, 1943, he consulted Dr. C. B. Courtney, of Newport News, for treatment of his feet. On March 15th, Dr. Courtney advised him that he should be relieved of duty and that he should consult Dr. Horace Longaker, chief sur-

geon of the shipyard, for the purpose of making claim for benefits under a group policy of insurance. He did not recall that he told Dr. Courtney about his jump from the bin because he did not think he would have any trouble from it. Dr. Courtney advised him to go to his home in Covington, Virginia, and place himself under the care of doctors there. This he subsequently did, sometime after June 28th, when he left the employ of the shipyard.

Claimant was a beneficiary under a group insurance policy of the Aetna Life Insurance Company, under a plan provided for the employees of the shipyard. The effective date of the policy was February 7, 1943, and one feature provided for group life insurance in the sum of $1500, and another feature provided for group disability insurance for temporary disability, not the result of an industrial accident covered by the Workmen's Compensation Act. Humphries applied for and received disability benefits for a non-occupational disability at the rate of $25 a week from March 27, 1943 to April 8, 1943, and for thirteen weeks following the termination of his services with the company on June 28, 1943. Under this type of policy, payments began with the eighth day of disability. He was subsequently paid $1500 under the group policy, its full face value for permanent total disability.

He was asked if he told his physicians, Doctors J. M. Emmett and R. P. Hawkins, of the Chesapeake & Ohio Railway Hospital at Clifton Forge, Virginia, after he had placed himself under their care, how he had injured his feet. He admitted that he did not, tell either of them that he had jumped from one of the bins to the floor, nor inform them that he had had an accident. When asked by one of them if he was doing the work of a painter by standing on a ladder, he merely informed him that he had been climbing about considerably. He was also asked if he ever described the alleged accident as he related it at the hearing, and he replied "I don't remember whether I did." He said he considered the climbing aggravated his condition, and that a doctor had told him if he had used steel supports in his shoes

to protect his insteps he probably would not have had any trouble.

On September 20, 1943, Humphries, after consulting Doctors Emmett and Hawkins, wrote his friend and fellow worker in the shipyard, the following letter:

"The doctors at the Clifton Forge Hospital informed me today after taking X-ray pictures again of my feet, that I could not go back to work for several months if able to go then. They claim I have a bone destruction in both feet (cause of trouble undetermined). When my feet first started to bother me last February, the Doctors in Newport News said it was neuritis and treated me for neuritis, but when I had my feet X-rayed at the Hospital they found I had a bone destruction, which started in the instep. Dr. Hawkins (at Hospital) asked me if I had been painting or climbing around on a painter's ladder. I told him no but explained to him about climbing up and down the bins and he seemed to think that was what started my trouble. If I had of used a steel arch in my shoes protecting my instep I would not of had this trouble. But it is too late to worry over it now. It worries me to think I have got to give up my job for I really enjoyed working for you and with the other employees. I wish you would explain to Mr. Farinholt why I can not return and thank he and all the rest for the favors shown me while I worked there. For every thing I asked for I got, such as the 4 to 12 and 12 to 8 shift as well as the raise in salary. I still live in hopes that my feet will heal and that I can go back to work some day. If I ever come to Newport News I will look you up. Be sure to remember me to all the Gang and tell 'Red' to take care of you and the rest. If I have any money at the office due me also paid on bond, I would appreciate very much if you will look after it for me. Also tell Red to go ahead and keep my wrenches he has and to drop by home the next time he is in Covington, as I want to see him. Also please tell Mallory that I will have his coffee urn delivered to him by the boy I roomed with in Newport News. He will under-

stand about it. I should have notified you before that I could not come back to work but I was living in hopes I would be able to return and take a sitting down job.

"Regardless of what the Doctors here say, I still live in hopes of being able to work again soon. Will close wishing you and the gang the very best of luck."

Humphries admitted that he had never given his employer notice setting forth specifically the time, place, and nature of his alleged accident, because he could not remember the date. He undertook to fix the date as early in February or about February 7th, because it was about a month before his first visit to Dr. Courtney. The latter date appears as the date of the issuance of the group insurance.

Lloyd Taylor, supervisor of the fitting division, purchasing department, testified that claimant worked for him as a clerk in the main storeroom from November 7, 1942, until June 28, 1943; that claimant was suffering considerably with his feet soon after he started working in November or December, 1942, and he had advised him to secure a type of shoe which would be easy on his feet, while walking on concrete floors; and that he had asked to be put on the night shift as the work would be easier on his feet, and this was arranged sometime in February. He recalled that the claimant told him on one occasion he jumped from a bin and hurt his feet, but he did not remember what date it was. He remembered, however, telling the complainant that ladders were supplied for use in connection with the upper bins. He advised him to go to the shipyard clinic and report his injury, but did not know whether he did so or not. He said that in June, when claimant followed the advice of Dr. Courtney to take a rest, claimant made no reference to any accident causing his disability.

In Humphries' notice of claim for permanent disability filed with the Aetna Life Insurance Company on October 20, 1943, there are contained the following questions and answers:

"7. Cause of disability and details of illness or accident and symptoms present: Osteoarthritis of bones of feet, deforming type; first bothered by pain and swelling in both feet in February, 1943, laid off then for few weeks, returned to work and in June condition became such that had to quit all work.

"8. Date symptoms first became known: Latter part of February, 1943.

"9. Date total disability began: June 28th, 1943.

"10. Date last worked: June 28th, 1943.

"16. Furnish any further information concerning disability: See physicians' reports."

The reports of Doctors Emmett and Hawkins, both eminent surgeons, filed by claimant in support of his claim for insurance benefits, show that questions answered making inquiry as to any accidental injury were, in each instance, answered in the negative. Both of these doctors described the condition of Humphries as pain and swelling in both feet, with a diagnosis as "osteoarthritis of feet, deforming type." A report by another physician, Dr. W. W. Johnson, Jr., contains the same information.

Dr. Hawkins testified that he made a thorough examination of the claimant in July or August, 1943, and had examined him since then. He said he suffered from osteoarthritis of the bones of the feet, "a deforming disease that occurs in the joints of the body, in which the bones of that joint become deformed, irregular," a condition which results in permanent disability. He was unable to determine when this condition started; but from a history of the patient, was of the opinion that it was a result of a syphilitic infection which had existed for a number of years prior to the time he made his examination, and that claimant had a perfect background as a result of his syphilitic condition to produce the symptoms that were present on and after February 7, 1943; that the disease was progressive, sometimes slowly and sometimes rapidly; and that the condition of Humphries was chronic rather than acute, as from trauma. He found

no physical evidence of any accident. Claimant did not tell him of jumping on to a concrete floor, and owing to the syphilitic background and symptoms found, he did not consider it necessary to look for any other cause. He thought trauma would aggravate a pre-existing condition of osteo-arthritis, although he was not surprised at claimant's condition regardless of his alleged jump for a distance of three feet in February.

Dr. Emmett testified that he had known the claimant for years and had seen him at intervals with Doctor Hawkins, largely because of his personal interest in him. He agreed with the testimony of Doctor Hawkins, and stated that the logical cause of claimant's condition is that he had a syphilitic infection. He described the condition as being a decaying of the bone marked by a distortion or change in structure, whereby maintenance and the continuity of the bone is interfered with, producing swelling and suffering. He was of opinion that the disease existed for sometime prior to February, 1943, and that the claimant must have been conscious of it, because he was walking on deformed feet. He said that in assisting claimant to make his proof of claim, from the knowledge he had of claimant's condition, the element of trauma or accident had not entered into it.

Dr. Horace Longaker stated that the records of the ship-yard's clinic did not show any accident as having been reported by claimant or that he had received any treatment for an accidental injury. He said that claimant consulted him on June 28th, in connection with his disability claim under the group insurance policy, advising him that his feet were hurting him, but giving no intimation whatever that it was due to an accident.

Neither Dr. Courtney nor four other doctors, who were consulted by the claimant between March and October 12, 1943, were called as witnesses. The records at the Clifton Forge hospital, where claimant was examined, contain no reference to the alleged accident.

Claimant, after being reminded that none of the doctors made any reference to an alleged accident in his claim filed

against the insurance company in October, 1943, was asked "When did you first think this jump down from the bin had anything to do with your condition?" His reply was "They (my feet) hurt me when I jumped and when they (the doctors) told me I had crushed bones that is when I thought that (the jump) caused it." He had written Lloyd Taylor on September 20, 1943, that the doctors had, that day, advised him that he had "a bone destruction in both feet (cause of trouble undetermined)." His explanation for his delay in making his claim against his employer was that he did not realize the seriousness of his disability.

The law involved seems to be clear. As usual in this type of case, the difficulty is in the application of the law to the facts. The case is unusual only by reason of the facts and circumstances. The applicable principles of law have been well stated in several recent cases.

The statute provides the weight which we must give to the Commission's finding. An award of the full Commission on review "shall be conclusive and binding as to all questions of fact." Virginia Code, 1942 (Michie) section 1887 (61). *Burlington Mills Corp.* v. *Hagood*, 177 Va. 204, 208, 13 S. E. (2d) 291, 292; *Byrd* v. *Stonega Coke, etc., Co.*, 182 Va. 212, 219, 28 S. E. (2d) 725; and *Carter* v. *Hercules Powder Co.*, 182 Va. 282, 288, 28 S. E. (2d) 736.

In *Byrd* v. *Stonega Coke, etc., Co.*, *supra*, Mr. Justice Hudgins said:

"On the hearing before the Industrial Commission, the claimant must carry the burden of proving his claim. The finding of the Industrial Commission is presumed to be correct and the burden is on appellant in this court to point out the error committed by the Commission. If, on appeal, this court determines that the evidence is sufficient to support the finding of the Industrial Commission, the order of the Commission will be affirmed. If, on the contrary, this court determines that the evidence is not sufficient to support such finding, the final order of the Commission will be reversed. Since the award of the Industrial Commission is against this claimant, the legal question presented to this

court is whether the evidence adduced compels an award for her; that is, whether the preponderance of the evidence, together with the inferences and presumptions which normally arise therefrom, is in favor of the claimant."

In *Hubbard* v. *Dan Valley Mills,* 182 Va. 223, 225, 28 S. E. (2d) 723, Mr. Chief Justice Campbell said:

"Since the decision of this court in *National Surety Co.* v. *Rountree,* 152 Va. 150, 159, 147 S. E. 537, it has been the settled rule of law in this Commonwealth that: '(a) Whenever there is a conflict of evidence, the findings of fact based upon a preponderance of the evidence, or upon that evidence deemed by the commission credible, are conclusive and binding; (b) when there is no conflict of evidence, then, if there be any evidence to support the findings of fact, such findings are conclusive and binding.' "

In *Carter* v. *Hercules Powder Co., supra,* Mr. Justice Eggleston said:

"If the evidence shows that it is just as probable that the disability resulted from a cause which is not compensable, as it is that it resulted from one which is compensable, the claimant has not sustained the burden of proof."

The Commission has found that the claimant has failed to carry the burden of proving his condition was a result of the injury claimed by him. If there is a conflict in the evidence and there is sufficient credible evidence to support the finding of the Commission, it must be sustained.

The testimony of the claimant is uncertain, confusing, and unconvincing. His statements and his actions prior to the making of his claim for compensation on November 20, 1943, eight and one-half months after the date of the alleged accident, are inconsistent and unsatisfactorily explained. He is contradicted as to certain material facts and circumstances. There is evidence that he was suffering from trouble with his feet continuously from the date of his employment, and had been advised prior to February 7, 1943, to procure a more suitable type of shoe to relieve his condition; that prior to the date of the alleged accident, he had asked for lighter duties on account of the condition of his

feet; that not until September 20, 1943, did he attribute his disability to any accident; and that not until after he had filed his claim for insurance benefits in October, 1943, did he mention the alleged accident as the cause of his disability. At the hearing on March 29, 1944, he changed not only the date of the accident, from the date given in his application for a hearing on his claim, but changed the theory upon which his claim is based, that is, from injuries causing his disability to injuries aggravating a quiescent condition of osteoarthritis. In none of his consultations with his physicians did he make any reference to accidental injury. In his letter to his friend, Taylor, no information is given or claim made of an accident. Instead he admitted if he had used steel arches in his shoes to protect his insteps, he would have avoided the trouble from which he suffered. Nothing in support of his application filed in October, 1943, for permanent disability insurance benefits indicates that he had an accident, which was either the producing or accelerating cause of his condition, although the inquiries therein specifically asked for such information. He made claim and received weekly sick benefits for non-occupational disability, which benefits he was entitled to receive only from the eighth day of disability. The reports of his physicians negative any accidental injury to his feet.

The attendant facts and circumstances all concur in impeaching the credibility of his claim. The evidence, as a whole, indicates that the definite cause of his disability is a result of a syphilitic condition and not of accidental origin.

Neither the Industrial Commission nor the courts are required to believe every statement of a witness simply because it is not directly contradicted in terms. Surrounding facts and circumstances and the conduct and actions of a witness often impeach his words. Frequently, "'actions speak louder than words."

The provisions of the statute, Virginia Code, 1942 (Michie), section 1887 (61), making the award of the Commission "conclusive and binding as to all questions of fact"

are not without reason or meaning. The opportunity and the facilities of the Commission to ascertain and evaluate the facts place a high value upon their conclusion when there is evidence to support it.

While the provisions of the Workmen's Compensation Act are to be liberally construed in favor of the workman, liberality of construction does not authorize the amendment, alteration, or extension of its provisions. It does not go to the extent of requiring that every claim asserted should be allowed. The claimant bears the burden of proof in establishing the fact that his injuries resulted from an accident. That his disability may be due to, or aggravated by, accidental injury is not sufficient. There must be more than a possibility or a mere speculation. *Carter* v. *Hercules Powder Co., supra.*

Claimant cites and relies upon the cases of *Winchester Milling Corp.* v. *Sencindiver,* 148 Va. 388, 138 S. E. 479; and *Ellis* v. *Commonwealth,* 182 Va. 293, 28 S. E. (2d) 730, to support his contention that his uncontradicted testimony shows that he suffered the alleged accident; that his pre-existing disease was thereby aggravated; and that the aggravation cannot be separated from the injury. The facts in those two cases, it seems to us, may be readily distinguished from those here.

In *Winchester Milling Corp.* v. *Sencindiver, supra,* the happening of the accident was undisputed. The questions involved were whether a cancer of the claimant had its origin in the injuries thereby suffered by him, and whether the injuries hastened his death. The evidence disclosed that the causal connection between the injury and the development of the cancer could not be separated. According to the uncontradicted medical testimony that is not true in the instant case.

In *Ellis* v. *Commonwealth, supra,* there was little or no conflict in the evidence. The only conflict was between the conclusion of medical experts, based upon different sets of circumstances. We accepted the conclusion of experts whose opinions were based upon a complete acquaintance with all

of the facts, and rejected the probable or conjectural opinions of others, based upon an incomplete acquaintance with the facts, resolving the presumptions in favor of the employee.

Here there is a conflict in the evidence as to the occurrence of the alleged accident. There is no conflict between medical experts. They declared that the disease from which claimant suffered would have produced his disability regardless of the accident. They found nothing to indicate that his disease was accelerated or aggravated by trauma.

A full consideration of the facts and circumstances brings us to the conclusion that the finding of the facts by the Commission is supported by the evidence. As no accident has been established, no consideration need be given to the claim of aggravation of a pre-existing condition. Likewise, the sufficiency of the notice of the alleged accident need not be considered.

For the foregoing reasons the order of the Industrial Commission is affirmed.

*Affirmed.*