# Richmond

## W. W. Bagwell v. Doyle and Russell, et als.

June 14, 1948.

Record No. 3404.

Present, All the Justices.

The opinion states the case.

*Louis Lee Guy*, for the appellant.

*Rixey & Rixey* and *Venable, Miller, Parsons & Kyle*, for the appellees.

STAPLES, J., delivered the opinion of the court.

The only question involved in this appeal is whether, within the meaning of the Workmen's Compensation Act, appellant was in "destitute circumstances" at the time of the accidental death of his son so as to bring him within the class of those "wholly dependent upon the deceased" and entitled to the benefit of the Act.

There is no conflict in the evidence. Appellant was possessed of no property of any kind. The Commission found, however, that he was not in "destitute circumstances" for three reasons: First, that he was capable of earning his own livelihood; second, that the law imposes upon his children the duty to support him, if in destitute circumstances, and they are financially able to do so; and, third, that even if he was incapable of earning a livelihood himself, his wife was working and supporting him at the time of the son's death.

Appellant contends, however, that his health and educational qualifications are such as to render it impossible for him to find or to perform any remunerative work; that the duty of his children to support him is subordinate to the obligation of the employer under the Act to make the payments to him as therein provided; and that there is no legal duty on his wife to support him or any certainty that she can or will continue to do so.

The opinion of the hearing commissioner contains the following findings of fact and conclusions of law:

"The father, W. W. Bagwell, asserts that he is in 'destitute circumstances,' and thus dependent upon the deceased by virtue of section 40, paragraph (d) of the Workmen's Compensation Act. This paragraph was added to the section in 1944 (Acts 1944, p. 108), and includes among those conclusively presumed to be wholly dependent upon a deceased employee 'parents in destitute circumstances, pro-

vided there be no total dependents pursuant to other provisions of this section.' So far as can be ascertained no other Workmen's Compensation Act contains such a provision, and for reasons which need not be elaborated here it may be seriously questioned whether it is consistent with the fundamental principles upon which the act is based. Whether or not Mr. Bagwell was in destitute circumstances is, of course, a question of fact, and the facts as they existed at the time of the accident control.

"The deceased was eighteen and a half years old and had graduated from high school about a month prior to the accident. It was his plan to enter college in the fall. He had only been working about a week, and made no financial contribution to the support of his father. He lived in the home with his parents and a brother and sister, both unmarried. There is no suggestion that his father was in any degree dependent upon him as a matter of fact.

"Claimant is fifty-eight years old. He owns no property. For about four years prior to December, 1946, he worked as a clerk in an A. B. C. Store at a salary of $140.00 a month. He states that at that time he discontinued this work because 'it was too hard' for him. Among his duties he was required to lift cases and 'put them on shelves.' Claimant then secured a job at the Naval Operating Base at the same salary, his work there consisting of taking inventory. This job continued until sometime in June, 1947, when the 'work gave out.' Between that time and the date of the death of his son claimant made one or two unsuccessful attempts to secure work, but he does not appear to have been very persistent in his efforts.

"Undoubtedly claimant is, and has been for a number of years, in bad health. His most serious trouble is a chronic myocarditis with a rapid pulse. The preponderance of the medical evidence is to the effect that claimant is unable to do work requiring physical exertion but that he is able to do light clerical work, and the finding is so made. Indeed claimant himself says that he was not totally disabled and

that he could do some light work such as that he was doing at the Naval Base.

"At the time of the accident, and for several years prior thereto, Mrs. Bagwell was working at the Naval Operating Base. Her present salary is $2000 a year. She is the pillar of the family and supported her husband whenever he was not working. The unmarried son and daughter, who lived in the home, were both employed, with annual incomes of approximately $1940 and $1680, respectively. Neither one contributed anything to the support of their father or the home. They did not even pay board or help around the house in any way.

"Under the circumstances above related the finding is made that the claimant was not in destitute circumstances at the time of the accident either as a matter of fact or within the meaning of section 40 of the act. This conclusion is reached for two principal reasons.

"First, claimant is able to do light work and had done such work for more than four years prior to the death of his son. It is true that he had not worked for about a month before that time, but this was because the work 'gave out' and not on account of his inability to do it. To hold that a man who is able to work is in destitute circumstances simply because he has been out of work for a month, with apparently no very serious effort to secure work, would be absurd and would tend to encourage slothfulness, thus vastly increasing the number of those on the public assistance rolls. It is a matter of common knowledge that in these times work is plentiful for those who really desire it. The condition of claimant's health is not overlooked, and what has just been said is applicable to the character of work which the medical evidence, his own testimony, and his own experience, indicate he can do. The suggestion is made that countless numbers of men are working and supporting themselves whose physical condition is comparable to that of claimant.

"Second, assuming that claimant is unable to do any work on account of his health, he is still not in destitute

circumstances. Section 1944a of the Code (Michie, 1942) makes it the duty of children over 16 years of age of sufficient income to support an infirm father in destitute or necessitous circumstances. The section provides means for the enforcement of this duty. Claimant has two adult unmarried children living with him with sufficient income to provide for his support. Indeed claimant could be supported by a contribution from these children equal to the reasonable cost of the board and lodging which they are not now paying. Section 40 will not be construed to mean that a man is in destitute circumstances when he has two children living with him whose legal duty it is, and who are able, to support him. So far as this record shows these children have not even been requested to assist their father. Surely it is not to be assumed that they would refuse to comply with their legal and moral obligation, and, if they did so refuse, they could be compelled to comply.

"Finally, it would be contrary to common sense and reason to hold that a man unable to work is in destitute circumstances when he is living in the home with two children whose legal and moral obligation, and a wife whose moral obligation, it is to support him, and whose aggregate annual incomes amount to more than $5500.

"For the reasons stated both applications must be denied and the case dismissed at the cost of the respective parties, and it is so ordered."

The foregoing findings of fact and the conclusions therefrom were affirmed upon Review by the Full Commission.

■ Whether a person is capable of earning a livelihood depends upon the facts. The facts themselves are established in this case by uncontradicted evidence and are not in dispute. We think the conclusion to be drawn therefrom with respect to whether the appellant is in destitute circumstances is a question of law. We, therefore, are called upon to examine the evidence to ascertain whether there are any undisputed facts, in addition to those included in the "findings" of the Commission, which are relevant to the question whether the appellant's physical condition is such as can reasonably be said to disable him from earning a livelihood.

The medical evidence consists of the written statements or reports of examinations of appellant made by four physicians, three of which were made at the request of the appellant and one at the request of the appellees.

Dr. E. W. P. Downing, of the Eastern Shore, was his family physician until appellant moved to Norfolk in 1942. He reported that the appellant's father and mother both died of heart disease; that appellant was never very strong and remained in the army only one year, doing light canteen work; that he was turned down for overseas duty because of a physical disability; that he developed a very painful kidney condition in 1928 from which he has suffered ever since; that he suffered frequently from these kidney attacks, which lasted for a period of two to three weeks, leaving him very weak and unable to do anything for quite a time; that he had tried to help appellant get a government pension because he was badly in need of it and had the necessary disability, but was unsuccessful because the disability could not be connected with war service; that appellant also has varicose veins which develop into ulcers if he is forced to stand on his feet any considerable length of time; and that, in his opinion, he is not able to work and needs to take care of himself.

It will be noted that the above conclusion reached by the family physician, Dr. Downing, with respect to appellant's disability was independent of the heart condition hereinafter referred to in the reports of other physicians. This omission would seem to indicate that the heart condition developed after appellant moved to Norfolk.

The report of Dr. James G. Price discloses the following physical infirmities: Moderately advanced arteriosclerosis and bilateral varicose veins; definite systolic and diastolic cardiac murmurs, with slight irregularity of rhythm and an occasional drop beat; the abdomen, in addition to obesity, showing a slight enlargment of the liver; a considerably enlarged prostate gland; spine, knees, and fingers, showing early arthritic changes. He thus expresses his conclusion

as the result of his examination: "It is my opinion that this man has long standing myocardia damage and is unable to perform his work in any gainful occupation that would require physical exertion."

The entire report from Dr. H. W. Rogers was as follows: "Mr. Wilmer Bagwell has had attacks of Renal Colic. He now has a Blood Pressure of 160. In my opinion he is not able to do laborious work."

The report from Dr. Robert Matthews, of Norfolk, the physician who made a physical examination of the appellant *at the request of appellees* states the following results of his examination:

"White, male, 58 years old, rather obese, weight 172 lbs., in no great discomfort when sitting down. Blood pressure is 150/90—heart very rapid, 150 beats per minute, taken on several occasions. Chest clear, abdomen large. He has marked varicose veins of the left leg which produce swelling of the ankle and discoloration around the ankle. The urine examination is normal."

Dr. Matthews also stated the following conclusions:

"I think that this man has a chronic myocarditis with a rapid pulse. I don't think he is able to do any work requiring physical effort. He may be able to do something in a clerical way, that is a sitting job, for a limited time."

Thus this report of the examination, made at the request of the appellees, corroborates the other three.

There can be no doubt about the fact that the appellant suffers from many and serious physical infirmities. He testified that he has to wear an elastic stocking and cannot stand on his feet without his leg swelling; that, while he worked at the A. B. C. store for several years beginning in 1942, his condition became such that it was necessary for him to discontinue the work in December, 1946. Three months later, in March, 1947, he obtained employment at the Naval Operating Base and remained there about three months when the job was discontinued. His work there was very light,—assisting in the taking of inventories. He

stated at the time he was testifying in September, 1947, that his condition was a little weaker than it was in the preceding June.

As to the likelihood of the appellant being able to obtain work of a clerical nature, the evidence is that he never had any experience in doing that kind of work. In his early years he worked on the farm, and did not progress beyond the seventh grade in his school work. In 1918 he was accepted by the army for limited duty, and after his discharge in 1919 did farm work until 1932, when, on account of his health, he discontinued farm work and obtained a position as clerk in a grocery store. Next year, in 1933, he obtained a job with WPA, which was terminated at the end of three months on account of his health. Thereafter, from 1933 to 1942, when he came with the A. B. C. store, he had no permanent employment, but worked in a number of temporary odd jobs like clerking in grocery stores on Saturdays.

The Commission has found as a fact that the appellant is not capable of doing any remunerative physical work. Unquestionably, this is in accord with the evidence.

The Commission also finds that he is *physically* able to do light clerical work. We think the evidence supports this finding. The evidence, however, shows that the appellant is not *mentally* qualified, either by education or experience, to do any clerical work which would offer a reasonable hope of employment. Even if he were so qualified, his physical ailments would undoubtedly impair his ability and undermine his endurance. It is a matter of common knowledge that an employer is extremely reluctant to take on, as a member of his staff, a person fifty-eight years of age who is suffering from the numerous diseases with which the appellant is afflicted.

We conclude, therefore, that the evidence compels the finding that the condition of the appellant precludes any hope of earning a livelihood by physical labor, and that his health, his lack of education, and his want of experience, combine to render it so highly improbable that he

could be gainfully employed in clerical work as to preclude any reasonable hope of earning his livelihood in that manner.

The conclusion of the hearing commissioner, which we have set out at length *supra*, to the effect that the appellant could not be deemed to be in "destitute circumstances" within the meaning of the Act, for the reason that section 1944a of Michie's Code imposes upon his children the duty to support their father if he is in destitute circumstances, and that said children are able to provide such support, was also affirmed by the full Commission upon review. Upon this question, the opinion of the full Commission had this to say:

"The claimant in this case is not in destitute circumstances so long as support may be required from his son and daughter, pursuant to the statute made and provided for such circumstances, or the wife voluntarily supports him. There is no basis for a finding of fact in claimant's behalf for the reason he is able to do certain work, is being supported, and has grown children from whom support may be enforced at law. The amendment to the Act was not intended to relieve able-bodied children of their legal and moral obligations. * * *

"The purpose of the amendment was to protect parents, where other total dependents were not involved, against being public charges.

"It was deemed better that the costs of such cases be charged to industry, there being no other liability outside burial expenses, than permit the parents of the victim of a fatal accident, to become a public charge. It is clearly contrary to the policy of the Act to charge industry with the loss, where it may be absorbed by remaining members of the family under legal and moral obligations to support them. An available means of subsistence is opposed to the idea of destitution.

"We do not believe legislative intent supports a construction which would relieve children of their legal and moral obligations."

The next legal question presented, therefore, is whether,

under the applicable statutes, the prior obligation rests upon the employer of the deceased's son to relieve the destitute circumstances, or whether the destitute father must exhaust his legal remedies against his children before becoming eligible to receive the benefits provided in the statute.

Section 39 and paragraph (d) of section 40 of the Workmen's Compensation Act require the employer to pay to a parent of the deceased who is in destitute circumstances weekly payments equal to sixty per cent of deceased's average weekly wages for a period of three hundred weeks. In this case the average weekly wage was $32, and therefore the amount of each such weekly payment would be $19.20.

The first paragraph of section 1944a of Michie's Code provides as follows:

"It shall be the duty of all persons sixteen years of age or over, of sufficient earning capacity or income, after reasonably providing for his own immediate family, to provide or assist in providing for the support and maintenance of his or her mother or aged or infirm father, he or she being then and there in destitute or necessitous circumstances."

It will be observed that the duty placed upon the child is not an absolute one. It is conditioned upon his financial ability to support the indigent parent "after reasonably providing for his own immediate family." Even if the child has this ability today, there is no assurance that it will continue for any particular length of time. He may marry and accumulate a sizeable family and their support may exhaust his income. Or he may lose his job or his health, or move to another State. It is obvious that this statutory duty imposed on the child by no means insures the parent a continuous livelihood for any definite period. Furthermore, it is a burden placed on the child which, in many cases, may operate as a handicap to his future progress.

On the other hand the benefits provided by the Workmen's Compensation Act insure the indigent parent a reasonably comfortable livelihood for nearly six years. It is not

accompanied by contingencies or uncertainties. We think it was the intent of the Act to provide this security.

As we said in *Dixon* v. *Norfolk Shipbuilding, etc., Corp.,* 182 Va. 185, 187, 28 S. E. (2d) 617: "This court has frequently stated the rule that the Compensation Act should be liberally construed in harmony with the humane purpose of the act."

Schneider's Workmen's Compensation Law, Second Edition, Volume I, page 2, thus states the public policy underlying the enactment of workmen's compensation statutes:

"The plain purpose of the compensation law is to make the risk of the accident one of the industry itself, to follow from the fact of the injury, and hence that compensation on account thereof should be treated as an element in the cost of production, *added to the cost of the article and borne by the community in general.*" (Italics ours).

While the Act imposes absolute liability upon the employer and his insurer to make the payments as therein provided, whether the employee's death is or is not the result of the employer's negligence, at the same time it relieves the employer of liability in an action at law under sections 5786-7 of the Code for death by wrongful act. If the death of appellant's son resulted from appellees' negligence, appellant could have been awarded damages therefor in such an action in the absence of the Workmen's Compensation Act.

We conclude that the duty of parental support imposed upon his children by section 1944a, *supra,* does not have the effect of rendering appellant not in "destitute circumstances" within the humane spirit and purpose of the compensation act.

The opinion of the full Commission also holds the appellant not to be in destitute circumstances because, at the time of the accident, his wife was working and voluntarily supporting him out of her earnings. We cannot agree. There was no legal duty on her to carry this burden in the past or to assume it for the future. Nor is there any assurance of the continuation of her willingness or ability

to do so. We do not think it would be within the spirit or purpose of the Act to shift the obligation thereby imposed on the employer and place it upon the wife, however loyal to her husband she may be or however willing to carry the burden. Moreover it is not within the spirit of the Act that the father of the deceased should be subjected to the continuing humiliation of being supported by the earnings of the deceased's mother.

The order of the Industrial Commission is reversed and the case is remanded with direction to allow the appellant the proper amount of compensation, together with attorney's fees incurred in this litigation.

*Reversed and remanded.*