# Richmond

CARY VAN GEUDER v. COMMONWEALTH OF VIRGINIA, MEDICAL COLLEGE OF VIRGINIA, HOSPITAL DIVISION.

June 18, 1951.

Record No. 3848.

Present, Hudgins, C. J., and Spratley, Buchanan, Miller and Whittle, JJ.

Robert Lewis Young, for the appellant.

J. Lindsay Almond, Jr., Attorney General, and Henry T. Wickham and Frederick T. Gray, Assistant Attorneys General, for the appellee.

John D. Epperly, amicus curiae.

BUCHANAN, J., delivered the opinion of the court.

Mrs. Van Geuder, a registered nurse, filed with the Industrial Commission a claim for compensation under the occupational disease provisions of the workmen's compensation law. She alleged that she had contracted tuberculosis out of and in the course of her employment as a nurse in the Medical College of Virginia Hospital. The hearing commissioner allowed compensation but on review the full Commission unanimously denied it on the grounds: (1) That her tuberculosis was an ordinary disease of life not compensable under section 65-42; (2) That tuberculosis was not cared for and treated in this hospital so as to render section 65-43(11) applicable to it; and (3) That her disease did not arise out of her employment.

1. The occupational disease provisions were introduced into the workmen's compensation law (now codified as sections 65-1 ff of the Code of 1950) by chapter 77, Acts, 1944, page 97, amended by chapter 244, Acts, 1948, page 480. Section 65-42 defines an occupational disease as a disease arising out of and in the course of the employment; but provides that no ordinary disease of life

to which the general public is exposed outside of the employment shall be compensable, except when it follows as an incident of an occupational disease.

But section 65-43 provides that "(T)he following diseases and conditions shall be deemed to be occupational diseases, and even they shall not be so considered unless they are in fact occupational within the meaning of the term occupational disease as defined in the preceding section:" then follows a schedule with fifteen numbered paragraphs, none of which lists tuberculosis by name, but paragraph (11) thereof provides as follows:

"(11) Infectious or contagious diseases contracted in the course of employment in or in immediate connection with a hospital or sanitarium in which persons suffering from such diseases are cared for and treated;"

This is the provision on which claimant bases her claim.

It is not questioned that tuberculosis is a contagious disease. We accept the finding of the Commission that it is an ordinary disease of life to which the general public is exposed. If only the provisions of section 65-42 are considered, the conclusion would be necessary that claimant's tuberculosis is not compensable since it did not follow as an incident of occupational disease. But when that section and section 65-43 are considered together, it seems fairly certain that it was not the purpose of the law to exclude from compensation every infectious or contagious disease to which the general public is exposed. If so, paragraph (11) would be a meaningless and useless provision. A construction leading to such result exposes its own weakness. That construction is to be reached, if the words used will allow, which will give effect to the underlying purpose of the law. *Bagwell* v. *Doyle & Russell,* 187 Va. 844, 855, 48 S. E. (2d) 229, 234; *Mills* v. *Detroit Tuberculosis Sanitarium,* 323 Mich. 200, 35 N. W. (2d) 239.

Reading the two sections together, we think it was intended to provide that infectious or contagious diseases, including tuberculosis, when contracted under the circumstances stated in paragraph (11), and when in fact occupational as defined in section 65-42; *i. e.,* when arising out of and in the course of employment, as that phrase is further defined in that section, shall be compensable. The Illinois statute (Smith-Hurd Illinois Statutes Annotated, 1950, § 172.6) defines occupational diseases in terms practically identical with section 65-42, and in *Stewart*

*Warner Corp.* v. *Industrial Comm.*, 376 Ill. 141, 33 N. E. (2d) 196, in which the death of the deceased was caused by pulmonary tuberculosis, it was held that the evidence did not prove that he died of an occupational disease; but the Illinois law contains no schedule of occupational diseases like section 65-43.

2. As stated, the Commission held that tuberculosis is not "cared for and treated" in the defendant hospital as required by said paragraph (11) as a prerequisite to liability. The facts are, as found by the Commission, that tubercular patients as such are not cared for and treated at the hospital and it has no tuberculosis ward. However, in accordance with the custom of general hospitals, it admits patients with active tuberculosis only as an emergency measure, including cases complicated by surgical diseases and pregnancy, as well as emergency cases referable to the tuberculosis itself, such as pulmonary hemorrhage or meningitis. Under that policy the hospital has some three to four such cases at all times.

It is clear that the Legislature did not intend by the enactment of the occupational disease law to provide a general system of health insurance. It provided compensation only for occupational diseases and carefully spelled out what was required to fill that description. It provided that no ordinary disease of life to which the general public is exposed outside of the employment shall be compensable. Certain named diseases were made compensable but only if they arose out of the employment as that term is defined in the law. Certain unnamed diseases, embraced in the general description of infectious or contagious diseases were included, provided (1) they are in fact occupational as defined; (2) they were contracted in the course of employment, (3) in or immediately connected with a hospital or sanitarium, (4) in which persons suffering from such diseases are cared for and treated.

No compensation is provided for infectious or contagious diseases that do not meet those terms. If a contagious or infectious disease not specifically named in the statute is contracted in the course of employment in a factory, in a store, in a restaurant, in a garage, or any other place where men and women are employed, it is not compensable, but treated as one of the ordinary diseases of life to which the general public is exposed outside of that employment. Thus the broad provision of section 65-42 that no ordinary disease of life shall be compensable is

qualified and an exception made with respect to infectious or contagious diseases if, but only if, they meet the four requirements stated above.

■ Among those requirements are that the disease must be contracted in a hospital or sanitarium, and that hospital or sanitarium must be one in which persons suffering from that disease are cared for and treated. In its context we think that means a hospital or sanitarium in which persons suffering from such disease are cared for and treated as a general practice, or as a business; not one that cares for and treats that disease only in an emergency; not one that would decline to admit one suffering from that disease if he came to be treated only for that disease.

It is in evidence that from .2% to .3% of the general population have active tuberculosis, and from 1% to 2% have tubercular lesions. It is further in evidence that X-ray surveys of all hospital admissions have revealed that from .5% to 1% have active tuberculosis that is unsuspected. If this be true, then practically all hospitals have admitted, or will admit, patients from whom tuberculosis may be contracted. If it had been the purpose of the Legislature to provide compensation for all personnel of all hospitals who contracted tuberculosis or other contagious diseases in the course of their employment therein, paragraph (11) should have read "infectious or contagious diseases contracted in the course of employment in or in immediate connection with a hospital or sanitarium." Instead, the Legislature specified a particular kind of hospital or sanitarium, one "in which persons suffering from such diseases are cared for and treated." Unless that qualifying phrase was meant to limit the hospitals and sanitariums in which the disease is contracted to those which make a business or a practice of both caring for and treating persons suffering from the particular infectious or contagious disease in question, then it does not mean anything.

"While the provisions of the Workmen's Compensation Act are to be liberally construed in favor of the workman, liberality of construction does not authorize the amendment, alteration, or extension of its provisions. It does not go to the extent of requiring that every claim asserted should be allowed." *Humphries* v. *Newport News Shipbuilding, etc., Co.,* 183 Va. 466, 479, 32 S. E. (2d) 689, 695.

■ There is a statement in the evidence to the effect that

statistics do not bear out completely the idea that the personnel in a tuberculosis sanatorium suffer a much greater exposure to tuberculosis and have a much higher incidence of disease than is the case with the personnel in general hospitals, due probably to instruction in isolation and more careful technique. However, if it is desirable to extend the provisions of the act to all hospitals, or even other places of work, where contagious diseases may be contracted as a result of working there, that is the business of the Legislature. We must take the statute as we find it, gather the legislative intent from the words used and give effect to the purposes thus ascertained. We cannot use the office of constrution to broaden the intended scope of the statute or change its meaning by refusing to give effect to what is written.

We agree with the Commission that the defendant is not a hospital in which tuberculosis is cared for and treated in the sense in which that phrase is used in section 65-43(11).

3. While this conclusion makes it unnecessary to decide whether the Commission's finding of fact that the claimant's tuberculosis did not arise out of her employment is supported by the evidence, we have nevertheless carefully considered the evidence and have concluded that this finding should be sustained.

It is agreed that there is no material conflict in the evidence as to any fact. In such case the established rule is that if there is evidence to support the findings of fact, such findings are conclusive and binding. *Hubbard* v. *Dan Valley Mills,* 182 Va. 223, 225, 28 S. E. (2d) 723, 724; *Humphries* v. *Newport News Shipbuilding, etc., Co., supra,* 183 Va. at p. 477, 32 S. E. (2d) at p. 694.

The complainant, thirty-seven years old, was employed in the defendant hospital from September, 1946, to October, 1948, residing outside the hospital but having most of her meals there. At the latter date a routine chest X-ray disclosed that she had tuberculosis. Prior to that time she had never suffered from tuberculosis nor had anyone in her family or with whom she had been intimately associated, except an uncle who had died with it about twenty years before. She had graduated from nursing school in 1937 and during her training was in excellent physical condition. After the X-ray examination of October 5, 1948, she was questioned by Dr. Ray, assistant professor of medicine at the Medical College in the department of pulmonary diseases. She then gave a history of intermittent coughing and expectora-

tion over a period of years, which in view of a negative chest film in September, 1947, Dr. Ray did not think was due to tuberculosis, but felt quite certain it was due to bronchial infection.

During her time at the hospital, claimant was employed in the delivery room on a different floor from the obstetrical room. The exposure in the delivery room is less than in the open wards. Known tuberculosis patients were not as a general rule admitted in the department in which she was employed. She recalled one patient who was discovered to have tuberculosis after admission and who remained as a patient until after she was delivered. Claimant was not assigned to the care of this patient but she would have to be in close proximity when she came up for examinations. She did not remember that this patient was coughing but they were told she had tuberculosis and to be careful. Other evidence showed this to have been an inactive case, away from the sanatorium two years, and it is unlikely that the disease will develop from a patient with an inactive case.

The records of the hospital showed that from July 1, 1946, through December 31, 1948, covering the period of claimant's employment, fifteen cases of tuberculosis were known to have been admitted to the obstetrical department, four active and eleven inactive. The four active cases were isolated and the nurses instructed to use isolation technique. The claimant was not on duty with three of those cases. The date of the other case was July 3, 1946, two months before the claimant's employment began, and the record on that case was not available because such records were not kept longer than eighteen months.

Of the eleven inactive cases not considered contagious, the claimant had no contact with three. The time sheets on seven had been destroyed since three of those were in 1946 and four in 1947, the latest being August 28, 1947. One of the eleven was the inactive case above referred to.

When persons are admitted to a general hospital like the Medical College Hospital, they are not normally given any examination for tuberculosis unless it is suspected; and it is probable that many patients who have it pass through without its being known, but there is no proof on that point. As stated, approximately .2% to .3% of the population have active tuberculosis. Among nurses the incidence is higher, not much greater than twice as high as in the general population.

Dr. Ray submitted a prepared statement giving his opinion

as to the exposure of nurses in general hospitals compared with the exposure of a member of the general public. In it he stated that in addition to known cases there is an unknown number of patients admitted who have the disease and in whom it is not suspected; therefore, it is generally accepted that hospital personnel in attendance upon patients are exposed to tuberculosis to a greater extent than is the general population; that the unknown case is the source of the greatest danger to hospital personnel. He expressed his belief that tuberculosis is a definite occupational hazard to the nursing profession in a general hospital and his feeling that when a nurse develops it while employed in hospital work she should be compensated for her disability; but he thought the amount of compensation would present the most difficulty, because some of the cases of tuberculosis among nurses are due to infection acquired while off duty and it is usually impossible to state exactly where a nurse acquired her infection.

Very clearly, however, that was not the theory which the Legislature carried into the law. On the contrary, it not only specifically limited the type of hospital in which the disease must be contracted, but also, and more specifically, defined the character of evidence required to prove that the disease arose out of the employment. That requirement (§ 65-42) is that it must be made apparent to the rational mind that there is, among other things, a direct causal connection between the conditions of the work and the disease; that the disease was contracted as a result of the exposure occasioned by the employment, and can fairly be traced to the employment as the proximate cause.

Dr. Ray, the only medical witness, offered no opinion, nor did any other person, that, upon consideration of all the circumstances, the claimant's disease arose out of her employment. He was invited to express his opinion whether it was contracted in her employment or elsewhere. He said he did not think anybody could answer that question; that he felt that as a member of the nursing profession she ran a greater chance of developing the disease than if she were a clerk in a store downtown, but he did not know where she developed it; and he thought it could be assumed that half of the cases of tuberculosis developing in nurses were due to infection acquired outside of their profession.

Of the thirty-two States having occupational disease laws in 1946, seventeen have schedules, apparently exclusive, listing the

occupational diseases. In addition to twenty-seven diseases described as being occupational, New York adds "any and all occupational diseases;" and Ohio lists twenty-two diseases followed by "all other occupational diseases;" without defining them in either case. The fifteen non-schedule States define in varying terms the occupational diseases made compensable. Only the Illinois and Indiana statutes define occupational disease and prescribe the elements essential to establish it as section 65-42 of the Virginia statute does.[1] For this reason cases from other States construing their own particular statutes are not very helpful.[2]

■ Under our statute the claimant does not make out a case for compensation merely by proving that she worked in a general hospital where the chances of infection are greater than in some other employment or among the public generally. If that were all, as the Commission stated, the burden would be on the hospital to prove that the disease was not contracted as a result of the work. That is not where the statute places the burden. The burden is on the claimant and the statute sets forth what must be proved to sustain that burden. *Bradshaw* v. *Aronovitch*, 170 Va. 329, 335, 196 S. E. 684, 686; *Norfolk, etc., Steamboat Co.* v. *Holladay*, 174 Va. 152, 157, 5 S. E. (2d) 486, 488.

■ While the claimant is not required to show the time, place and circumstances of her exposure, as if her claim was based on injury by accident (*Blue Diamond Coal Co.* v. *Aistrop*, 183 Va. 23, 31 S. E. (2d) 297), it is nevertheless required under the statute that her evidence demonstrate to the rational mind that her disease is fairly to be traced to her employment as the proximate cause. That may be accomplished by circumstantial evidence, but such evidence must take the question beyond surmise or conjecture in order to meet the demands of the statute. *Sullivan* v. *Suffolk Peanut Co.*, 171 Va. 439, 443, 199 S. E. 504, 505-6, 120 A. L. R. 677. "If the evidence shows that it is just as probable that the disability resulted from a cause which is not com-

---

[1] "Legal Aspects of Occupational Disease" by Thomas C. Angerstein, of the Chicago Bar, 18 Rocky Mountain Law Review, p. 240.

[2] Such are these cases relied on by the claimant: *McIntyre* v. *Lavino & Co.*, 344 Pa. 163, 25 A. (2d) 163; *Perron's Case*, 325 Mass. 6, 88 N. E. (2d) 637; *Underwood* v. *National Motor Castings Division*, 329 Mich. 273, 45 N. W. (2d) 286; *LeLenko* v. *Lee Co.*, 128 Conn. 499, 24 A. (2d) 253; *Vilter Mfg. Co.* v. *Jahncke*, 192 Wis. 362, 212 N. W. 641; *Milwaukee County* v. *Industrial Comm.*, 224 Wis. 302, 272 N. W. 46; *San Francisco* v. *Industrial Acci. Comm.*, 183 Cal. 273, 191 P. 26; *Harman* v. *Republic Aviation Corp.*, 298 N. Y. 285, 82 N. E. (2d) 785.

pensable, as it is that it resulted from one which is compensable, the claimant has not sustained the burden of proof." *Carter* v. *Hercules Powder Co.*, 182 Va. 282, 288, 28 S. E. (2d) 736, 738.

It must be apparent to the rational mind from the evidence that the requisite causal connection exists. The Industrial Commission is the rational body constituted to determine that question in the first instance. It has said here that the evidence offered is not sufficient. We cannot say that it requires a different conclusion.

The award is

*Affirmed.*